STATE of Missouri ex rel. M. E. GORRIS, Relator-Appellant,

v.

The Honorable George MUSSMAN, Mayor, The Honorable Billy Keenum, City Administrator, The Honorable Kenneth Molloy, The Honorable Raleigh Jessup, The Honorable Jerry Davis, The Honorable Ron Fowler, The Honorable June Schaber, The Honorable Robert Reller, The Honorable Don Bleckle, The Honorable Ed Griesenauer, Board of Aldermen of the City of O'Fallon, State of Missouri, Respondents.

No. 40806.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 16, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 13, 1981.

Gerald L. Birnbaum, O'Fallon, for relator-appellant.

Paul Niedner, St. Charles, Robert M. Wohler, O'Fallon, for respondents.

STEPHAN, Judge.

Appellant, M. E. Gorris, instituted this proceeding in mandamus in the Circuit Court of St. Charles County to compel defendants to reinstate him to the position of Police Administrator of the O'Fallon, Missouri, Police Department and to obtain back

pay dating from the time of his dismissal. The circuit court granted an alternative writ of mandamus pending a hearing. After a hearing, the circuit court quashed the alternative writ and denied the peremptory writ, dismissing the cause with prejudice. We affirm.

The relevant facts are as follows:

The City of O'Fallon was, at the time of the events herein recounted, a city of the fourth class, governed by the provisions of Chapter 79, RSMo 1969. The city's board of aldermen hired Gorris as a major in the police department in May of 1974. At a regular meeting of the board on November 15, 1977, with Gorris, Mayor George Mussman, City Administrator Billy Keenum, and seven of the eight elected city aldermen in attendance, both the mayor and Alderman Molloy exchanged words with Gorris indicating that a dispute existed between him and the city government. Alderman Molloy observed that, approximately four years earlier, he had made the motion which resulted in Gorris's employment and that until the last year he had been proud of Gorris. Molloy stated, however, that in the year preceding the meeting Gorris's relationship with the board had deteriorated to the point where Molloy did not think the board could work with Gorris anymore. At this point, Gorris said to Molloy, "Then why don't you make a motion to remove me." Accepting the challenge, Molloy made such a motion, which passed by a vote of five to two. The mayor then stated that he approved the action of the board and directed Gorris to turn in his badge. Appellant's subsequent request for a hearing was denied at the board's meeting of December 20, 1977.

On appeal, Gorris argues that the mayor and board of aldermen retained no "at will" removal power under § 79.240, because the board, pursuant to §§ 77.042 through 77.048, RSMo, had by ordinance delegated to the city administrator the authority to remove him from his appointive office. He further contends that, even if the board and mayor retained authority to remove him under the "at will" provisions of § 79.240,

the removal was wrongful because: (1) it was accomplished by mere majority vote and not by a two-thirds vote, which appellant maintains is required by § 79.240; (2) he was not given written notice of the fact of his dismissal, as required under § 27 of City of O'Fallon Ordinance No. 578, an ordinance which the board is authorized to pass under § 79.240. Finally, appellant attacks the order of the circuit court denying his petition for the writ and quashing the previously-issued alternative writ on the grounds that the court's order is ambiguous and inconsistent.

Section 79.240 provides that the mayor of a fourth class city such as O'Fallon "may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city *at will*, and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendations." [Emphasis added.]

Section 77.042, RSMo, gives third and fourth class cities the option of providing by ordinance for the employment of a city administrator, "who shall have general superintending control of the administration and management of the government business, officers and employees of the city, subject to the direction and supervision of the mayor." In April, 1977, the City of O'Fallon enacted Ordinance No. 570 creating the office of city administrator. Under § 77.046, RSMo, a city electing this option may also provide by ordinance "that all other officers and employees of the city, except elected officers, shall be appointed and discharged by the city administrator, but the governing body may make reasonable rules and regulations governing the same." The City of O'Fallon exercised this option in Ordinance 570, § 6, paragraph F, which provides in part as follows:

"The City Administrator shall have the power to appoint and remove (in accordance with Personnel System Regulations approved by the Board of Aldermen) all subordinate employees of the City of O'Fallon."

Ordinance 578 establishes Personnel System Regulations. Section 27 of Ordinance 578 regulates dismissals by the city administrator. This section lists several items constituting cause for dismissal and sets forth requirements for notice and hearing.

Another statute pertinent to our inquiry is § 77.048, RSMo, which states in part: "Except as provided in sections 77.042 to 77.048, . . . the mayor and board of aldermen of any fourth class city which adopts the city administrator form of government shall retain all the powers given to it by the laws applying to the city before the city administrator form of government was adopted, and all laws governing the city under its prior form of government and not inconsistent with the provisions of sections 77.042 to 77.048 shall apply to and govern the city after it adopts this form of government."

This case presents the issue of whether the board of aldermen in a fourth class city that has granted to the city administrator the authority to dismiss an employee under § 77.046 nonetheless retains the power under § 79.240 to fire an appointive official at will. Appellant takes the position that his dismissal was improper because the city did not comply with Ordinance 578, which in his view abrogates the "at will" removal power under § 79.240, RSMo. We disagree.

As best we can determine, Missouri courts have not yet ruled on this precise question;[1] we therefore proceed directly to the relevant statutory language. Section

77.048 provides for retention by the mayor and board of aldermen of any powers that they had before adopting the city administrator form of government, if those powers are "not inconsistent with the provisions of sections 77.042 to 77.048." We must therefore examine whether the mayor and board, acting under § 77.046, delegated by ordinance to the city administrator any powers inconsistent with their § 79.240 powers.

■ Ordinance 570, § 6, paragraph F gives the city administrator the power to remove subordinate city employees in accordance with Personnel System Regulations. Those regulations, appearing in § 27 of Ordinance 578, seem to give the administrator the power to remove employees only for cause. This section requires the employee's supervisor to "state the cause for dismissal . . . in writing," and lists sixteen "items" that "constitute cause for dismissal." The section concludes with notice and hearing requirements with respect to an "employee determined to be in violation of any or several of the above items." Nothing in either of the pertinent city ordinances states that the city administrator's power of dismissal is to be exclusive. From this reading of the ordinances, we conclude that we need not reach the question of whether the board of aldermen *can* by ordinance divest itself of its "at will" removal power and transfer it elsewhere.[2] We find that it *did not* delegate away that power in this case. We assume that even if the legislature intended the board to be able to

1. For example, appellant relies on *Cooper v. City of Creve Coeur*, 556 S.W.2d 717 (Mo.App. 1977); and respondents rely on *Russell v. City of Raytown*, 544 S.W.2d 48 (Mo.App.1977). Neither is particularly instructive on this point. In *Cooper*, the issue of a possible conflict between an ordinance authorized by § 77.046 and the "at will" dismissal powers conferred by § 79.240 was simply not before the court, and the matter was resolved by application of the latter statute. In *Russell*, there was a municipal "personnel code" enacted by ordinance, which provided that persons appointed by "the mayor and/or Board of Aldermen" could only be dismissed for cause after notice and hearing. However, the holding was "confined to the narrow ground that the personnel code does not place the city attorney beyond the power of the mayor to remove him with the requisite con-

sent of the Board." Id., 51. The case did not involve a "city administrator" form of municipal government.

2. We note, however, that we think it unlikely that the legislature would allow the board of aldermen to create a power greater than itself. That is to say, it does not seem reasonable that the city administrator's authority to hire and fire should be greater than that of the very officials who created that authority. Although no cases address this point directly, reason dictates that § 77.046 exists simply to help fourth class cities to expedite their business, including personnel matters, and not to curtail the power of the mayor and board in such important areas.

delegate away its "at will" removal power by ordinance under § 77.046, nonetheless that power is not automatically delegated away by the passage of such an ordinance. Rather, we believe that any such abrogation (assuming arguendo that the board may abrogate this power) would have to be explicit in the language of the ordinance.

■ Indeed, § 77.046 concludes with a clause authorizing the board to make rules and regulations governing the city administrator's power to appoint and discharge employees. This clause strongly suggests that the legislature contemplated variations in the extent of dismissal power delegated to the city administrator. In the case at bar, the pertinent ordinance, 578, clearly limits the city administrator's power to dismissals for cause. The view that the board may delegate away its "at will" removal power is essential to appellant's position. We find some support for this view in the language of § 77.046: the board "may provide that all other officers ... *shall* be ... discharged by the city administrator." [Emphasis added.] Even if we accept this view, however, we must also recognize in the statutory scheme the implicit message from the legislature that it intended *some* entity in the city government to have "at will" removal power. Appellant's position is essentially that the board of aldermen lost the power without giving it to anyone else, a position we find untenable. Accordingly, we hold against appellant on this issue, and conclude that § 79.240 was a proper route for the city government to choose in this case.

■ The next point raised is whether the dismissal under § 79.240 was invalid because the motion received votes constituting less than a two-thirds majority of the elected aldermen.[3] Section 79.240 appears to establish two procedures for removal "at will" of appointive officers. The section provides that "[t]he mayor may, with the consent of a *majority* of all the members elected to the board of aldermen, remove from office any appointive officer of the

city at will." [Emphasis added.] There is also a provision that "any such appointive officer may be so removed by a *two-thirds* vote of all members elected to the board of aldermen, *independently of the mayor's approval or recommendation.*" [Emphasis added.]

At the meeting of the board of aldermen on November 15, 1977, one alderman made a motion to remove appellant from his appointive office. Another alderman seconded the motion. The mayor, who was presiding over the meeting, asked for discussion and, hearing none, asked for a roll call vote. A majority, short of two-thirds of the membership, voted for dismissal. The mayor "announced the roll call vote and stated that he approved of the motion." The issue presented is whether the mayor's expression of approval, which came after the board's vote, sufficed to bring the dismissal within the first of the two procedures set out in § 79.240. In other words, was this action removal by the mayor, or was it removal by the board of aldermen? We conclude that this was removal by the mayor, so that the simple majority obtained by respondents was sufficient to discharge appellant.

■ Appellant argues that since the action in question was "initiated" by the board and not by the mayor a two-thirds vote was necessary. We cannot agree. Which of the two procedures under § 79.240 is to be followed does not depend on who "initiated" the action to remove the official but on who actually exercises the removal power. In the case at bar, the board of aldermen could not exercise their removal power: too few of them voted for removal of appellant. The mayor chose to exercise his removal power. To do so, he needed: (a) to remove appellant, which he quite clearly did; and (b) to act "with the consent ... of the board of aldermen," which he quite clearly had. Nothing in § 79.240 requires the mayor to obtain consent *after* he expresses the desire to remove an appointive official, and we can find no practical

---

**3.** Five members, or 62.5%, of the eight elected aldermen voted in favor of the dismissal. Two voted against, and one member was absent.

362

reason for concluding that the legislature intended such a requirement. Under appellant's position, the city could have complied with the statute if the mayor, after seeing that the aldermen were unable to generate a two-thirds majority, instead of saying he "approved" the motion, had stated that he wished to remove appellant and had asked for the board to consent by means of a new vote. A second vote to reaffirm the consent given by the board minutes before would be an empty ritual, which we do not believe the legislature intended to impose on the city government. In this case, the actions of the board and the mayor, following one upon the other, coalesced; together, these actions constituted a proper dismissal under the requirements of § 79.240.

 Appellant next contends that his removal was invalid because respondents failed to comply with § 27 of Ordinance 578, which requires written notice of dismissal. Finding this contention without merit, we rule the point against appellant. Section 27 of Ordinance 578 by its terms applies only to the city administrator and to department heads. The removal here was undertaken by the mayor with the consent of the board of aldermen through the "at will" removal power which the board and the mayor retained under § 79.240. Section 27 of Ordinance 578 does not apply to the exercise of that retained "at will" removal power; rather, it applies to removals for cause undertaken by the "City Administrator and/or Department Head."

We find appellant's remaining two points on appeal worthy of only brief mention here. Appellant contends that the trial court erred by apparently ruling the issue of back pay against him because it erroneously found that he was properly discharged. We need not consider this issue since we uphold the discharge.

Finally, appellant contends that the circuit court's judgment was ambiguous and inconsistent because the court quashed the alternative writ of mandamus that it had previously issued and also dismissed with prejudice appellant's petition for a peremptory writ. Appellant argues that the ambi-

guity arises from the fact that the quashing of the alternative writ was an appealable order, whereas the dismissal of the petition opened the way for him to file his petition anew in this court. Appellant is correct in his assessment of the effect of each order. See *State ex rel. Brandon v. Hickey*, 462 S.W.2d 159 (Mo.App.1970). Nonetheless, appellant sought review by appeal, and we cannot discern how such a slight, technical irregularity, given the facts of this particular case, could have prejudicially affected his rights.

Affirmed.

GUNN, P. J., and PUDLOWSKI, J., concur.