Jerry D. HARDESTY, Plaintiff–
Appellant,

v.

CITY OF BUFFALO, a Municipal
Corporation, Defendant–
Respondent.

No. 26036.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 7, 2004.

Motion for Rehearing and Transfer
Denied Dec. 28, 2004.

Application for Transfer Denied
March 1, 2005.

James M. Kelly, Republic, MO, for Appellant.

M. Douglas Harpool, Kristoffer R. Barefield, Springfield, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

Jerry Hardesty ("Hardesty") appeals from an adverse judgment entered in a declaratory judgment action he brought against the City of Buffalo ("the City") after he was removed as Chief of Police. In Hardesty's lawsuit, he sought a judgment declaring that his removal from this appointed office was invalid because the City failed to comply with § 79.240.[1] The trial court concluded the City's action was authorized by § 79.120, so Hardesty's lawsuit was dismissed with prejudice. Hardesty challenges this ruling as erroneous. We affirm.

## I. Facts and Procedural History

The facts in this case are straightforward and undisputed. The City is located in Dallas County, Missouri, and is subject to all state statutes governing cities of the fourth class, including those set forth in Chapter 79, RSMo. One of the appointive offices established by the City, pursuant to § 79.050 and § 79.230, is Chief of Police. Hardesty was the duly-appointed and acting Chief until October 13, 2003, when he was removed from office. On that date, the six elected members of the City's board of aldermen were evenly divided on the issue of whether Hardesty should continue as Chief. Three aldermen voted against Hardesty's removal, and three aldermen voted for his removal. The Mayor cast the tie-breaking vote to remove Hardesty from office.

On October 28, 2003, Hardesty filed a declaratory judgment action against the City. In the lawsuit, Hardesty alleged his removal from office violated § 79.240 because it had not been done "with the consent of a majority of all the members elected to the board of aldermen...." Hardesty claimed he could not be removed from office in compliance with § 79.240 unless four of the six persons elected as aldermen voted to remove him. The City's answer admitted that the factual allegations in the petition were true, but denied that Hardesty had been improperly removed from office.

In November 2003, the City filed a motion for judgment on the pleadings. This motion was granted by the trial court on December 31, 2003. The reasons for the court's ruling were contained in a docket entry stating, in pertinent part, as follows:

The legal issue and factual setting of the instant case are identical with [the] Eastern District Court of Appeals deci-

---

1. All references to statutes are to RSMo (2000), unless otherwise specified.

sion in *State ex rel. Ciaramitaro v. City of Charlack*, 679 S.W.2d 405 (1984).... After considerable thought this court holds that section 79.120 RSMo controls, and agrees that this statute effectively makes the mayor a member of the Board of Aldermen for the exclusive purpose of casting tie breaking votes. This tie breaking authority is not limited to only certain types of actions of the Board of Aldermen as advocated by Plaintiff's counsel.

After entry of a judgment dismissing Hardesty's case with prejudice, he filed a timely notice of appeal.

## II. Standard of Review

Because the trial court granted the City's motion for judgment on the pleadings, we review the allegations of Hardesty's petition to determine whether the facts pled therein are insufficient as a matter of law. *RGB2, Inc. v. Chestnut Plaza, Inc.*, 103 S.W.3d 420, 422 (Mo.App.2003); *Green v. Lebanon R–III School Dist.*, 87 S.W.3d 365, 367 (Mo.App.2002). For the purposes of such a motion, the moving party admits the truth of all well-pleaded facts in the opposing party's pleadings. *State ex rel. Nixon v. American Tobacco Co., Inc.*, 34 S.W.3d 122, 134 (Mo. banc 2000). A trial court properly grants a motion for judgment on the pleadings if, from the face of the pleadings, the moving party is entitled to a judgment as a matter of law. *Craig v. Missouri Dept. of Health*, 80 S.W.3d 457, 459 (Mo. banc 2002).

## III. Discussion and Decision

Hardesty's appeal presents a single issue for our determination. He argues that his removal from the appointive office of Chief of Police was invalid because the City did not comply with the requirements of § 79.240, which states:

The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office, for cause shown, any elective officer of the city, such officer being first given opportunity, together with his witnesses, to be heard before the board of aldermen sitting as a board of impeachment. Any elective officer, including the mayor, may in like manner, for cause shown, be removed from office by a two-thirds vote of all members elected to the board of aldermen, independently of the mayor's approval or recommendation. *The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will,* and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendation. The board of aldermen may pass ordinances regulating the manner of impeachments and removals.

(Italics added.) As previously noted, the City has six elected aldermen. Hardesty interprets the phrase, "with the consent of a majority of all the members elected to the board of aldermen" to mean that four of the six elected aldermen had to vote in favor of his removal as Chief of Police for that decision to comply with § 79.240.

The trial court, however, concluded that Hardesty was properly removed from office because there was a tie vote among the elected aldermen on this question, which permitted the Mayor to cast the deciding vote. The trial court based its decision on § 79.120, which states:

*The mayor shall have a seat in and preside over the board of aldermen, but shall not vote on any question except in case of a tie,* nor shall he preside or vote in cases when he is an interested party.

He shall exercise a general supervision over all the officers and affairs of the city, and shall take care that the ordinances of the city, and the state laws relating to such city, are complied with. (Italics added.) As the trial court noted in its docket entry, *State ex rel. Ciaramitaro v. City of Charlack*, 679 S.W.2d 405 (Mo. App.1984) does support the conclusion that § 79.120 authorized the mayor to break the tie vote concerning whether to retain or remove Hardesty. In *Charlack*, Ciaramitaro was dismissed as the Chief of Police for the City of Charlack after the mayor recommended her dismissal to the four-member board of aldermen. Two aldermen voted in favor of dismissal, and two aldermen voted against dismissal. The mayor broke the tie by voting in favor of Ciaramitaro's dismissal. Ciaramitaro sought a writ of mandamus to compel the City of Charlack to reinstate her as Chief of Police. The trial court granted the writ. *Charlack*, 679 S.W.2d at 406. The City of Charlack appealed, arguing that § 79.120 authorized the mayor to break a tie among the aldermen even though the question to be decided concerned the removal of an officer pursuant to § 79.240. The Eastern District of this Court agreed and reversed the trial court's judgment:

> Although we have found no Missouri cases addressing whether a mayor is considered one of the "members elected to the board of aldermen" under § 79.240, substantially the same language appears in § 79.130, which requires a majority of the members elected to the board to approve an ordinance before it becomes law. In *Mound City ex rel. Reinert Bros. Const. Co. v. Shields*, 220 Mo.App. 798, 278 S.W. 798 (1925), the court held that § 8404 RSMo 1919, now § 79.120, gives the mayor the right to cast the tie-breaking vote when the question before the board of aldermen concerns the passage of an ordi-

nance. 278 S.W. at 801[4]; see also *Grant City v. Salmon*, 221 Mo.App. 853, 288 S.W. 88, 90 (1926). If § 79.120 effectively makes the mayor a member of the board of aldermen for purposes of resolving a tie among the aldermen under § 79.130, then under § 79.120 the mayor has the right to break a tie vote when the question before the board arises under § 79.240.

> . . . .

> Section 79.120 gives the mayor the authority to break a tie vote on any question before the board. Thus, the mayor may cast a tie-breaking vote regardless of whether the board is considering the passage of an ordinance, the removal of an officer, or some other proposed action. The phrase "members elected to the board of aldermen," within the context of §§ 79.130 and 79.240, simply reinforces the idea that the questions of approval of an ordinance or of removal of an officer are questions to be answered by the board of aldermen; the question of how tie votes are resolved is not answered by either § 79.130 or § 79.240.

*Id.* at 407.

Hardesty acknowledges that the trial court correctly applied *Charlack* in the instant case, but he complains that "the holding in *Charlack* is fundamentally and logically flawed, disregards the plain wording of the applicable statute, and disregards rules of statutory construction." We disagree.

The statutes now codified as § 79.120, § 79.130 and § 79.240 were originally enacted by the General Assembly in 1895 as part of one act regulating cities of the fourth class. *See* 1895 Mo. Laws 67, 68 and 77. Section 7 of the Act, which is now § 79.120, stated:

The mayor shall have a seat in and preside over (over) the board of aldermen, but shall not vote on any question except in case of a tie, nor shall he preside or vote in cases when he is an interested party. He shall exercise a general supervision over all the officers and affairs of the city, and shall take care that the ordinances of the city, and the state laws relating to such city, are complied with.

1895 Mo. Laws 67 (parenthetical in original). This statute has remained unchanged since 1895. Section 11 of the Act, which is now § 79.240, stated:

The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office, for cause shown, any elective officer of the city, such officer first being given opportunity, together with his witnesses, to be heard before the board of aldermen sitting as a board of impeachment. Any elective officer, including the mayor, may in like manner, for cause shown, be removed from office by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendation. The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will, and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendation. The board of aldermen may pass ordinances regulating the manner of impeachments and removals.

1895 Mo. Laws 68. This statute also has remained unchanged since 1895. Section 62 of the Act, which is now § 79.130, stated:

The style of the ordinances of the city shall be: "Be it ordained by the board of aldermen of the city of _____ as follows." No ordinance shall be passed except by bill, and no bill shall become an ordinance unless on its final passage a majority of the members elected to the board of aldermen shall vote for it, and the ayes and nays be entered on the journal; and all bills shall be read three times before their passage. No ordinance shall be revived or re-enacted by mere reference to the title thereof, but the same shall be set forth at length, as if it were an original ordinance. No bill shall become an ordinance until it shall have been signed by the mayor or person exercising the duties of the mayor's office, or shall have been passed over the mayor's veto, as hereinafter provided.

1895 Mo. Laws 77. In the respects material here, this statute likewise has remained unchanged since 1895.[2]

The primary rule of statutory construction is to give effect to legislative intent as

---

**2.** Section 79.130 was amended in 1988 and now states: "The style of the ordinances of the city shall be: 'Be it ordained by the board of aldermen of the city of ......, as follows:' No ordinance shall be passed except by bill, and no bill shall become an ordinance unless on its final passage a majority of the members elected to the board of aldermen shall vote for it, and the ayes and nays be entered on the journal. Every proposed ordinance shall be introduced to the board of aldermen in writing and shall be read by title or in full two times prior to passage, both readings may occur at a single meeting of the board of aldermen. If the proposed ordinance is read by title only, copies of the proposed ordinance shall be made available for public inspection prior to the time the bill is under consideration by the board of aldermen. No bill shall become an ordinance until it shall have been signed by the mayor or person exercising the duties of the mayor's office, or shall have been passed over the mayor's veto, as herein provided."

reflected in the plain language of the statute. *State v. Blocker*, 133 S.W.3d 502, 504 (Mo. banc 2004). Each word or phrase in a statute must be given meaning if possible. *Id.* In addition, provisions of an entire legislative act must be construed together and if reasonably possible all provisions must be harmonized. *Community Fed. Sav. & Loan v. Director of Revenue*, 752 S.W.2d 794, 798 (Mo. banc 1988); *Collins v. Director of Revenue*, 691 S.W.2d 246, 251 (Mo. banc 1985); *Blaine v. J.E. Jones Const. Co.*, 841 S.W.2d 703, 711 (Mo. App.1992). When we construe § 79.120 and § 79.240 together, as we must, these two statues can be reasonably harmonized in a fashion that gives effect to the plain meaning of the words and phrases used by the General Assembly in each statute.

■■■■ We begin by noting that there is no constitutional or statutory provision specifying what constitutes a quorum for a board of aldermen in a fourth class city.[3] In the absence of such a provision, the common law rule applies: a quorum is a majority of all the members of the board of aldermen. *State ex rel. Otto v. Kansas City*, 310 Mo. 542, 276 S.W. 389, 404 (1925); *State ex rel. Kiel v. Riechmann*, 239 Mo. 81, 142 S.W. 304, 312 (1911). So long as a quorum of the board of aldermen is present, the transaction of a fourth class city's general business can be conducted. *See City of Rolla v. Schuman*, 189 Mo. App. 252, 175 S.W. 241, 243 (1915). Thus, four members of the City's board of aldermen would constitute a quorum; an affirmative vote from three of those four aldermen would be sufficient to transact the City's general business.[4] *Id.; see also Trusler v. Tate*, 941 S.W.2d 794, 800–01 (Mo.App.1997).

■■■ There are two statutes in Chapter 79, however, which prohibit certain proposed actions from being approved by a mere majority of a quorum of the City's board: (1) the passage of ordinances, § 79.130; and (2) the removal of officers, § 79.240. These particular actions require the consent and/or approval of a majority of the *elected* members of the board of aldermen to be effective. We believe "elected" was included for a reason: to raise the minimum number of affirmative votes which must be cast—before an ordinance is passed or an officer is removed—from a majority of a *quorum* of aldermen to a *majority of the entire elected board of aldermen.*

Applying this principle to the case at bar, § 79.240 states, in pertinent part, that "[t]he mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will...." Because the City's board of aldermen is comprised of six members, we interpret the foregoing language to impose a requirement that there be four affirmative votes in order to remove an appointive officer like Chief of Police.

Hardesty argues, however, that this language also should be interpreted to preclude anyone except an elected member of the board of alderman from casting one of the four required affirmative votes, even when the entire board is equally divided on

---

**3.** *Cf.* § 79.552, which applies to fourth class cities and authorizes an eligible municipality to create a nine-member municipal redevelopment authority. Subsection 3 of this statute states that "[f]ive members of the authority shall constitute a quorum, and any action or order of the authority shall require the approval of at least five members."

**4.** The mayor of a fourth class city does not constitute a member of the board of aldermen for the purpose of determining whether a quorum is present. *See Reynolds County Telephone Co. v. City of Piedmont*, 152 Mo.App. 361, 133 S.W. 141, 142 (1911).

the question of removal. We reject this argument as inconsistent with the plain language of § 79.120 and contrary to long-standing Missouri precedent.

■ As previously noted, § 79.120 states, in pertinent part, that "[t]he mayor shall have a seat in and preside over the board of aldermen, but shall not vote on any question except in case of a tie, nor shall he preside or vote in cases when he is an interested party." Thus, the only statutory exception to a mayor's authority to resolve a tie vote occurs when the mayor is an interested party and the interest is either directly personal or pecuniary. *City of Velda City v. Williams*, 98 S.W.3d 880, 883 (Mo.App.2003); *Hammer v. City of Osage Beach, Missouri*, 318 F.3d 832, 838 (8th Cir.2003). Since the mayor is entitled to break a tie vote on "any question" except when he or she is an interested party, we conclude this tie-breaking authority extends to any matter which is properly before the board of aldermen for a vote, including a vote to remove an appointive officer pursuant to § 79.240. *See Charlack*, 679 S.W.2d at 407; 56 AM. JUR.2D *Municipal Corporations* § 154 (2000) ("[w]here the statute provides that the mayor shall have a casting vote in the case of a tie and does not limit this casting vote to any particular kind or class of business it extends to all matters which may properly come before the board"). We would not be giving the phrase, "any question," its plain and ordinary meaning if we construed it to include less than all matters properly coming before the board of aldermen for a vote. *See, e.g., Singer v. Siedband*, 138 S.W.3d 750, 753 (Mo.App. 2004) (plain and ordinary meaning of the phrase "any person injured thereby" is not limited to a particular type of person).

We find this interpretation particularly reasonable here since the predecessor statutes to § 79.120, § 79.130 and § 79.240 all were adopted at the same time as part of one act. If the legislature had intended to prevent a mayor from breaking tie votes involving the passage of an ordinance or removal of an officer, § 79.120 would have been drafted to include these limitations along with the existing prohibition against the mayor breaking a tie vote when he or she is an interested party.

■ Just as importantly, the General Assembly is presumed to be aware of the interpretation placed upon existing statutes by this state's appellate courts. *Kilbane v. Director of Dept. of Revenue*, 544 S.W.2d 9, 11 (Mo. banc 1976). A court's construction of statutory language becomes a part of the statute as if it had been so amended by the General Assembly. *State v. Crawford*, 478 S.W.2d 314, 317 (Mo.1972). In *Mound City ex rel. Reinert Bros. Const. Co. v. Shields*, 220 Mo.App. 798, 278 S.W. 798, 801 (1925), the Western District of this Court held that, even though § 79.130 establishes the requirements for passage of an ordinance, § 79.120 is controlling and authorizes the mayor to cast the deciding vote in case of a tie. In *Charlack*, the Eastern District of this Court held that, even though § 79.240 establishes the requirements for removal of an appointed officer, § 79.120 is controlling and authorizes the mayor to cast the deciding vote in case of a tie. *Charlack*, 679 S.W.2d at 407–08.

■ Since *Mound City* was decided in 1925, there have been wholesale changes made to Chapter 79. Most of the existing statutes found therein have been amended, and a number of new statutes have been added to this chapter.[5] At no time, howev-

5. *See, e.g.,* § 79.020 (amended in 1949 and 1978); § 79.030 (amended in 1978 and 1989); § 79.035 (added in 1981); § 79.040 (amended in 1949 and 1978); § 79.050

er, has the General Assembly amended § 79.120 so as to abrogate the construction placed upon it by *Mound City* or *Charlack.* "The general rule is that where an act is amended the parts retained are regarded as a continuation of the former law and are entitled to receive the same construction." *Wring v. City of Jefferson,* 413 S.W.2d 292, 300 (Mo. banc 1967). Under these circumstances, we believe that if the General Assembly had intended to prevent a mayor from exercising the authority granted him or her by § 79.120 to break a tie vote involving passage of an ordinance or removal of an officer, the General Assembly would have expressly done so in an amendment to this statute. *See State ex rel. School District of City of Independence v. Jones,* 653 S.W.2d 178, 187 (Mo. banc 1983).

In conclusion, we hold that Hardesty was properly removed from his appointive office as Chief of Police. Once the six elected aldermen voted and there was a 3–3 tie on the question before the board, the Mayor was authorized by § 79.120 to break the tie and cast the deciding vote. *Charlack* was properly decided and is controlling here. Therefore, the trial court's judgment is affirmed.

SHRUM and BARNEY, JJ., Concur.

(amended in 1961, 1987, 1988, 1989 and 1998); § 79.055 (added in 1997); § 79.070 (amended in 1986 and 1999); § 79.080 (amended in 1986); § 79.090 (amended in 1983); § 79.130 (amended in 1988); § 79.160 (amended in 1979); § 79.165 (added in 1951 and amended in 1979); § 79.170 (repealed in 1978); § 79.190 (amended in 1993); § 79.250 (amended in 1967, 1969, 1978, 1987 and 1994); § 79.280 (amended in 1978, 1982, 1985, 1989 and 1999); § 79.365 (added in 1997 and amended in 1998); § 79.380 (amended in 1969); § 79.383 (added in 1993); § 79.420 (repealed in 1988); § 79.450 (amended in 1971); § 79.460 (amended in 1978); § 79.470 (amended in 1971); § 79.480 (added in 1933); § 79.490 (amended in 1978 and 1987); § 79.495 (added in 1987); § 79.550 (amended in 1988 and 1990); § 79.552 (added in 1988 and amended in 1990 and 1995); § 79.555 (added in 1988); § 79.557 (added in 1988); § 79.560 (added in 1988 and amended in 1990); and § 79.565 (added in 1988 and amended in 1990).