

# Missouri Court of Appeals

### Southern District

#### Division Two

CITY OF ST. ROBERT, MISSOURI,    )
                                                          )
    Plaintiff-Respondent,    )
                                                          )
v.                                                        )    No. SD33221
                                                          )
ALAN CLARK,                             )    **Filed: Mar. 11, 2015**
                                                          )
    Defendant-Appellant.    )


APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

Honorable Douglas D. Gaston, Associate Circuit Judge


**AFFIRMED IN PART, AND REVERSED IN PART WITH INSTRUCTIONS**

In early April 2012, the city of St. Robert, a fourth-class city ("City"), acting by a majority vote of its Board of Aldermen ("the Board"), terminated its appointed city administrator, Alan Clark ("Administrator"). A couple of weeks later, City filed a petition for a declaratory judgment in the circuit court. The petition sought judicial declarations that City was not obligated to: (1) provide Administrator with a post-termination hearing; (2) temporarily suspend Administrator with pay; or (3) pay Administrator two months salary because City code section 105.110(F) ("the Ordinance") that provided for these things violated two state statutes: section 71.010 and section 79.240.[1]

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2000. All rule references are to Missouri Court Rules (2014). Section 79.240 was amended in 2013 to add a new subsection concerning "non-elected

1

Administrator counterclaimed for declarations prohibiting City from interfering with his work as city administrator and enjoining City from recruiting a new city administrator. Administrator claimed that his "purported discharge was improper, unlawful and ineffective in that he was neither" discharged by: (1) a majority vote of the Board with the approval of the mayor, nor (2) discharged by a two-thirds majority vote of the Board.

After the parties filed competing motions for summary judgment, the trial court entered a summary judgment in favor of City. That judgment declared: (1) Administrator "was lawfully removed from his appointed office as City Administrator"; and (2) the Ordinance was "void ab initio to the extent it exceeds the provisions of Chapter 79.240, RSMo."

Administrator's timely appeal contends the trial court legally erred in entering its summary judgment because: (1) Administrator was not "properly removed from office" in that the removal vote violated the requirements of section 79.240 and the Ordinance as "the vote was neither a simple majority with mayoral consent nor a super-majority without mayoral consent";[2] and (2) the Ordinance did not conflict with section 79.240 as it "only added the right to a name clearing hearing after the employee was terminated."

On what appears to be a question of first impression in Missouri, we hold that the trial court did not err in finding that Administrator had been "lawfully removed from his appointed office" because the relevant statutes did not prohibit the acting president of the Board from both voting in favor of Administrator's removal in his capacity as a board

chief law enforcement officer[s,]" but that added subsection is not relevant to the instant appeal. Sections 79.240.2 and 106.273.1. RSMo Cum. Supp. 2013.

[2] Administrator asserts in his brief that the Ordinance "requires an identical process [to that contained in section 79.240] up through the point of termination." In its response to Point I, City does not address the Ordinance at all. Since the parties do not contend that the Ordinance requires or permits anything regarding termination that is inconsistent with section 79.240, we consider Point I solely in the context of the requirements of section 79.240.

2

member and also providing the necessary mayoral consent in his capacity as acting mayor during the elected mayor's temporary absence. We therefore affirm that portion of the judgment. However, because no justiciable controversy concerning the legality of the Ordinance was before the trial court, we reverse that portion of the judgment and remand the matter with instructions for the trial court to enter a judgment that denies City's petition for lack of a justiciable controversy.

## Applicable Principles of Review and Governing Law

> The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* The facts contained in affidavits or otherwise in support of a party's motion are accepted "as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Only genuine disputes as to material facts preclude summary judgment. *Id.* at 378. A material fact in the context of summary judgment is one from which the right to judgment flows.

*Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011). "If, as a matter of law, the circuit court's judgment is sustainable on any theory, it should be affirmed on appeal." *Id.* at 453.

## Procedural Background

We accept uncontested facts provided in support of the parties' competing summary judgment motions as true. *Goerlitz*, 333 S.W.3d at 452-53. A factual allegation in a summary judgment motion that is not denied in the response is "treated as admitted." *Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 85 (Mo. App. E.D. 1999).

City's "**MOTION FOR SUMMARY JUDGMENT**" ("City's motion") alleged particular facts as supporting its request for a declaration that the Ordinance was void *ab initio* and that Administrator was not entitled to: (1) a hearing; (2) to be placed on suspension; or (3) to receive any payment under the Ordinance. Administrator's response to City's motion admitted some of City's alleged facts and denied others. It also affirmatively asserted other specific facts. City filed a "**REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**" ("City's reply") that specifically admitted or denied particular facts alleged by Administrator and also asserted still other specific facts. Administrator did not address those additional factual assertions as he did not file a sur-reply to City's reply.

Administrator also filed a "**MOTION FOR SUMMARY JUDGMENT WITH SUGGESTIONS IN SUPPORT THEREOF**" ("Administrator's motion"). Administrator's motion asserted specific facts that he argued supported a judicial declaration "that the purported removal of him as [city a]dministrator on April 2, 2012, [sic] was ineffective as a matter of law[.]" City filed "**COUNTERCLAIMANT [CITY'S] SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CROSS[-]MOTION FOR SUMMARY JUDGMENT**" (City's cross-motion") that admitted certain facts alleged by Administrator and denied others. City's cross-motion also asserted additional specific facts it argued supported the denial of Administrator's motion and the entry of summary judgment in City's favor on what City referred to as Administrator's "counterclaim[.]" Administrator did not file a response to City's cross-motion.

4

Based upon these filings, the facts for our review consist of those specifically admitted in the pleadings responsive to the competing summary judgment motions, plus the additional facts asserted in City's reply and cross-motion as they were deemed admitted when Administrator failed to deny them.

## The Undisputed Material Facts

On March 15, 2012, City's mayor, George Sanders ("Mayor"), took a 90-day leave of absence from his position for "medical and personal reason(s)." At that time, Todd Williams was the acting president of the Board ("President").[3] The Board was composed of eight members, including President. At the Board's regularly scheduled April 2, 2012 board meeting, alderman Larry Jackson made a motion, seconded by alderman James Phillips, to terminate Administrator as city administrator. President, Mr. Jackson, Mr. Phillips, and two other aldermen, Alan Johannsen and Bill Shaw, voted in favor of the motion. Two aldermen, Ed Spotts and Sylvia "Butchy" Newkirk, voted against termination. One alderman, William Urena, was not in attendance at the meeting and did not cast a vote. On April 3, 2012, President informed Administrator of the Board's vote to remove him as city administrator. President "did approve of [Administrator's] termination[.]"

---

[3] At argument on the competing motions, Administrator's counsel acknowledged that City's cross-motion "incorporated . . . three additional averments of fact which are not in dispute." Specifically, City had asserted that Mayor's leave of absence was "a 90-day" one "for 'medical and personal reason(s)[,'"] that Mr. Williams was the "Acting President and Mayor Pro Tem of the Board" on March 15, 2012, and that he was "duly reelected to" these positions on April 2, 2012. Additionally, Administrator did not specifically deny the assertions in City's reply that President approved of Administrator's termination and Mayor was not serving as the mayor on April 2, 2012. Finally, Administrator concedes in his statement of facts in his brief that "[Mr.] Williams was the President of the Board of Alderm[e]n and under [section 79.100] served as Mayor Pro Tem during [Mayor's] leave of absence." These facts are treated as admitted. *Cf.* **Mothershead**, 994 S.W.2d at 85 (a fact alleged in a summary judgment motion that was not denied in the response was "treated as admitted").

5

**Analysis**

*Point I – Administrator's Termination*

Administrator argues that he "was improperly fired because the termination vote was neither a simple majority with mayoral consent, nor a 2/3 majority without mayoral approval."[4] Administrator asserts -- without citation to any authority -- that because the trial court's factual findings did not include that his "termination was by mayoral decision with [the Board's] consent," a vote of six out of eight in favor was necessary for removal, and the trial court had to find that "the termination was improper." The flaw in this argument is that we review a "summary judgment *de novo*." *Goerlitz*, 333 S.W.3d at 452. As a result, we are not bound by the trial court's legal conclusions or recitation of the undisputed facts.

Administrator focuses on the specific provisions of section 79.240 that address the removal of an appointed officer in a fourth-class city. Our analysis, however, begins with a broader view that encompasses the relationship between the mayor and the board of aldermen in a fourth-class city. "The mayor shall have a seat in and preside over the board of aldermen, but shall not vote on any question except in case of a tie, nor shall he preside or vote in cases when he is an interested party." Section 79.120. A fourth-class city is to be

---

[4] Point I actually contends that in finding that Administrator "was properly removed[,]" "the judgment is not supported by substantial evidence, is against the weight of the evidence, and either erroneously declares or applies the law" in finding that Administrator was properly removed. While these separate and distinct error claims may be stated together when reciting the applicable standard of review, *see, e.g., Pearson v. Koster*, 367 S.W.3d 36, 68 (Mo. banc 2012), because the nature of the claims differ from one another, they should be addressed in separate points relied on. *Cf. Sauvain v. Acceptance Indem. Ins. Co.*, 437 S.W.3d 296, 299 n.1 (Mo. App. W.D. 2014) ("'against-the-weight-of-the-evidence' challenges are not the same as 'not-supported-by-substantial-evidence' challenges; hence, pursuant to Rule 84.04, these separate and distinct challenges should have been separated into two distinct points relied on"); *see also* Rule 84.04(d)(1)(B). Although Point I is deficient for purporting to cover all four of the potential error claims, we may exercise "discretion to examine the substance of" the error claimed, *Sauvain*, 437 S.W.3d at 299 n.1, and we do so here as the nature of the argument that follows the point indicates that the claim at issue in this case is that the trial court misapplied the law. With the exception of this defect in Administrator's point, we commend all counsel involved in this appeal for their excellent briefing and oral argument.

6

divided into at least two wards, and two aldermen "shall be elected from each ward by the qualified voters thereof[.]"  Section 79.060.1.

The board is to "elect one of their own number" to be the "'acting president of the board of aldermen[.]'"  Section 79.090.  Section 79.100 directs that the acting president "shall" assume the duties of the mayor when the mayor is absent:

> When any vacancy shall happen in the office of mayor by death, resignation, removal from the city, removal from office, refusal to qualify, or from any other cause whatever, the acting president of the board of aldermen shall, for the time being, perform the duties of mayor, with all the rights, privileges, powers and jurisdiction of the mayor, until such vacancy be filled or such disability be removed; or, in case of temporary absence, until the mayor's return.

With that overview in mind, we now turn to section 79.240.1, which provides:

> The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will, and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendation.  The board of aldermen may pass ordinances regulating the manner of impeachments and removals.

"Which of the two procedures under [section] 79.240 is to be followed does not depend on who 'initiated' the action to remove the official but on who actually exercises the removal power."  *State ex rel. Gorris v. Mussman*, 612 S.W.2d 357, 361 (Mo. App. E.D. 1980).

In *Gorris*, the mayor was held to have legally removed a police administrator by announcing the board's majority vote and requesting the police administrator's badge *after* five of eight aldermen voted in favor of removal.  *Id.* at 359.  The eastern district of our court reasoned that the statute did not require "the mayor to obtain consent after he expresses the desire to remove an appointive official" and to do so "would be an empty ritual[.]"  *Id.* at 361-62.  Rather, "the actions of the board and the mayor . . . coalesced" for "a proper dismissal under the requirements of [section] 79.240."  *Id.* at 362.  Here, as in

7

*Gorris*, it is of no legal import that President did not recommend the removal of Administrator before the Board voted.

As the parties conceded at oral argument, the real question we must resolve is whether President could exercise his authority both as an alderman and as acting mayor. Administrator reasons that this case could be viewed as though "the Board tied at 4 votes, and [President] cast the fifth tie-breaker vote on the Board, and then issued approval as mayor at the same time."[5]  In making this argument, Administrator relies on the reasoning from *Chad v. City of Lake Ozark*, 223 S.W.3d 208 (Mo. App. W.D. 2007), as superior to that expressed in *Hardesty v. City of Buffalo*, 155 S.W.3d 69 (Mo. App. S.D. 2004), and *State ex rel. Ciaramitaro v. City of Charlack*, 679 S.W.2d 405 (Mo. App. E.D. 1984).

These three cases all addressed the power of the mayor to cast a tie-breaking vote for the removal of an appointed official.  Such votes were upheld in *Charlack* and *Hardesty*, but rejected in *Chad*.  223 S.W.3d at 210, 212; 155 S.W.3d at 70, 76; and 679 S.W.2d at 406, 407.  The instant case is factually distinguishable from all of these cases because the Board's vote to remove Administrator did not result in a tie, and President was an alderman acting

---

[5] Administrator offers an opposite argument in his reply brief -- that we should assume that President was acting as the mayor when he voted, and the mayor could not "vote on the Board of Aldermen except in the case of a tie."  Based on this reasoning, he contends "[t]here is no justification or authority for giving [President] the right to vote on the Board when the Mayor could not."  Administrator offers no authority for his supposition that President lost his power to act as a board member when Mayor took his leave of absence.

Administrator also suggests in his reply brief that a super-majority was needed to remove him, relying on *State ex rel. Ragsdale v. Walker*, 68 Mo. App. 110 (K.C.D. 1896), which construed an older statute similar to section 79.240.  He asserts that "because of the absence of the [m]ayor" in *Walker*, "a super[-]majority was needed instead of the mayor pro tem issuing the necessary mayor consent for a simple majority."  In *Walker*, the mayor asserted that he had to be present for the city council to impeach him even with a two-thirds approval of the city council because the mayor was the president of the council.  *Id.* at 111.  The council had found the mayor guilty of impeachable conduct and then it "unanimously adopted a resolution declaring the said office of mayor of said city to be vacant."  *Id.* at 116.  The court found that the council had "the power of removal by a two thirds vote in spite of the mayor," *id.* at 117, that another provision of the statute provided for a "president *pro tem*" to preside in the absence of the mayor, and further, that it was sufficient that "the president *pro tem*" presided over the impeachment trial instead of the mayor.  *Id.*  These findings do not compel us to find that an acting president may not act for a temporarily absent mayor under section 79.100 for purposes of removing an appointed official under section 79.240 or that the acting president loses the power to vote as an alderman as a result of acting for the mayor.

8

for the temporarily absent Mayor. None of the cited cases construe the provision of section 79.100 that addresses an acting president's power to "perform the duties of mayor, with all the rights, privileges, powers and jurisdiction of the mayor . . . in case of temporary absence, until the mayor's return."

As noted in *Hardesty*, "[t]he primary rule of statutory construction is to give effect to legislative intent as reflected in the plain language of the statute." 155 S.W.3d at 73-74; *see also Farmers' & Laborers' Co-op Ins. Ass'n v. Dir. of Revenue, State of Mo.*, 742 S.W.2d 141, 145 (Mo. banc 1987). "When the plain language of the statute is clear and unambiguous, we do not apply any other rule of construction." *City of Univ. City v. AT & T Wireless Servs.*, 371 S.W.3d 14, 18 (Mo. App. E.D. 2012). Here, neither the plain language of section 79.100 nor section 79.240 includes any restriction on the acting president's ability to recommend or consent to the removal of an appointed official during the temporary absence of the mayor. And the plain language of these sections and section 79.090 includes no limitation on an acting president's ability to continue to act as an alderman while temporarily performing the duties of an absent mayor.

The absence of such a limitation is consistent with the general idea, as discussed by Eugene McQuillin, in *The Law of Municipal Corporations*, 1174-1175 (Publisher's Editorial Staff, 2011 Revised Volume) (citing *Heller v. Ticknor*, 207 A.2d 336 (N.J. App. Div. 1965), that "[a]n acting mayor who assumed the duties of that office upon the resignation of the mayor may be permitted to continue to hold the office of council member at large and exercise the powers and duties of council member at large." Further:

> A council member chosen to preside in the absence of the mayor or other presiding officer does not lose his or her right, while serving as such, to vote as a member, even though the mayor is entitled only to a casting vote

9

upon a tie; but if serving as mayor pro tempore, he or she cannot also vote as mayor.

*Id.* at 1178 (footnotes omitted but citing ***Michael v. State***, 50 So. 929, 933 (Ala. 1909) (councilman "was not, as an incident of such appointment to preside, stripped of the right to vote upon the passage of the ordinance"); ***Harris v. People***, 70 P. 699, 700 (Colo. 1902) (mayor pro tem "retained his right to vote" as town trustee); ***Shugars v. Hamilton***, 92 S.W. 564, 565 (Ky. 1906) ("mere fact that [council member] is discharging temporarily the duties of the office of mayor does not interfere with the performance of his duties as councilman," but he "cannot also vote as mayor"); ***Freint v. Borough of Dumont***, 157 A. 382, 383 (N.J. Sup. Ct. 1931) (in assuming mayor's duties during mayor's absence, "president of council did not cease to be a councilman" and could vote as such); and ***Herring v. City of Mexia***, 290 S.W. 792, 793-94 (Tex. Civ. App. Waco 1926) ("when a commissioner presides in the absence of the mayor, he is none the less a commissioner and is not deprived of his right to vote")).  Finally, to hold that President lost his power to vote as an alderman during the absence of Mayor would deprive the residents of President's ward of half of the aldermanic voting power they would otherwise have under section 79.060.

Administrator also argues that "[President] is, like any other member of government, a member of a single branch of government only and may not act for two branches of government in the same transaction."  Administrator maintains that to permit President to act in both roles "violates the tripartite concept upon which our government is based."  Administrator does not cite any authority for this contention, and it has been recognized that a mayor's functions in a given situation may overlap such bright lines.  *Cf.* ***Ruggeri v. City of St. Louis***, 441 S.W.2d 361, 365 (Mo. 1969) (functions of charter city's mayor were "variously executive, administrative and legislative" such that "[t]he separation of powers

demanded by Article II" of our state constitution were "not applicable." "An appellant has an obligation to cite appropriate and available precedent if he expects to prevail, and, if no authority is available to cite, he should explain the reason for the absence of citations." ***Brown v. Ameristar Casino Kansas City, Inc.***, 211 S.W.3d 145, 148 (Mo. App. W.D. 2007). By failing to either cite such precedent or explain its absence (and assuming that this particular claim was otherwise preserved for our review), we consider Administrator's constitutional argument abandoned. ***Pool v. Farm Bureau Town & Country Ins. Co. of Missouri***, 311 S.W.3d 895, 902 (Mo. App. S.D. 2010).

While we acknowledge that neither section 79.240 nor the existing case law specifically resolves the question before us, Administrator has failed to convince us that the trial court misapplied the law in concluding that Administrator was "properly removed from office[.]" Point I is denied.

*Point II – No Justiciable Controversy Regarding the Ordinance*

Administrator contends that the portion of the judgment that declared the Ordinance void *ab initio* was erroneous because the Ordinance "did not conflict with [section 79.240] by improperly adding additional restrictions on [City's] right to terminate an at-will employee" in that "a name clearing hearing" is the only thing added by the Ordinance. Administrator's argument maintains that the Ordinance is identical to section 79.240, except that it adds (as he summarizes it): "1. A post-termination name clearing hearing if the City Administrator so requests, and 2. The ability for the Board to approve options other than full termination, and instead utilize an optional suspension process -- should the Board so choose."

After making this claim, Administrator saliently notes later in his brief that

11

[i]n the instant case, the whole discussion is a bit academic in the first place, since [City] never purported to have suspended [Administrator] -- they just fired him outright without a vote on suspension. [City] never paid [Administrator] up to two months salary while suspended, no doubt because he was fired outright. Ultimately, the language in [the Ordinance] that create[s] the suspension option or the post-termination name clearing hearing option is meaningless because those options were never exercised in this case.

The following additional facts are relevant to the resolution of this point. City's petition averred that Administrator had orally requested a hearing when he was informed of his termination on April 3, 2012. On the date City held such a hearing, Administrator did not personally appear, and his answer to City's petition denied that he had requested the hearing. Administrator's answer also admitted that "[t]he Board did not vote to suspend [Administrator.]" As a result, the undisputed material facts did not establish that Administrator had either requested a hearing concerning his removal or had been suspended by City.

City's position is that the facts are irrelevant because the judgment's declaration that the Ordinance was void *ab initio* "solely concerns a question of law" and "does not depend on the factual circumstances of [Administrator's] removal." We disagree.

While "declaratory judgments are a proper vehicle for testing the validity of statutes or ordinances[,]" *Northgate Apartments, L.P. v. City of North Kansas City*, 45 S.W.3d 475, 479 (Mo. App. W.D. 2001), *see also* section 527.020, such a judgment must result from "a justiciable controversy . . . which presents a real, substantial, presently-existing controversy as to which specific relief is sought, as distinguished from an advisory decree offered upon a purely hypothetical situation." *Northgate Apartments*, 45 S.W.3d at 479. "A justiciable controversy exists where: 1) the plaintiff has a legally protectable interest at stake; 2) a substantial controversy exists between the parties with genuinely adverse interests; and 3)

12

the controversy is ripe for judicial determination." ***Bldg. Owners & Managers Ass'n of Metro. St. Louis, Inc. v. City of St. Louis, MO***, 341 S.W.3d 143, 148 (Mo. App. E.D. 2011).

> Actions are merely advisory when there is an insufficient interest in either plaintiff or defendant to justify judicial determination, i.e., where the judgment sought would not constitute a specific relief to one party or the other. They are merely advisory when the judgment would not settle actual rights. If actual rights cannot be settled the [decree] would be a pronouncement of only academic interest.

***Spencer v. Vill. of DeKalb***, 408 S.W.2d 78, 80 (Mo. 1966).

Here, Administrator denies that he requested a hearing and agrees that he was not suspended by City. As a result, any declaration as to how the Ordinance might apply to such matters was purely hypothetical -- it had no connection with the actual dispute between these parties. In the absence of such a dispute, the trial court lacked any authority to declare the Ordinance void *ab initio*. Because that portion of the trial court's judgment was a nullity, Point II is moot.

### Decision

The judgment of the trial court is affirmed insofar as it grants City's cross-motion and denies Administrator's motion for summary judgment on Administrator's "counterclaim." The judgment's declaration that the Ordinance was void *ab initio* is reversed, and the matter is remanded with instructions to enter a judgment that denies City's petition for lack of a justiciable controversy.

DON E. BURRELL, J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. - CONCURS IN PART; DISSENTS IN PART

GARY W. LYNCH, J. - CONCURS

13



# Missouri Court of Appeals

## Southern District

### Division Two

CITY OF ST. ROBERT, MISSOURI,    )
                                 )
    Plaintiff-Respondent,         )
                                 )
v.                               )    No. SD33221
                                 )
ALAN CLARK,                      )    **Filed: Mar. 11, 2015**
                                 )
    Defendant-Appellant.          )

### APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

Honorable Douglas D. Gaston, Associate Circuit Judge

### CONCURRING IN PART AND DISSENTING IN PART

I must respectfully dissent. I acknowledge that existing case law does not specifically resolve the question before us, but I am convinced that allowing the mayor pro tem to vote both as the mayor and the board member was a misapplication of the law. I agree that the mayor pro tem could vote as a member of the board of alderman to fire Clark. If he did so, then the portion of section 79.240 that would be applicable would be the second half of subsection 1. Section 79.240.1 provides, in part:

> The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will, and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of

1

the mayor's approval or recommendation. The board of aldermen may pass ordinances regulating the manner of impeachments and removals.

Only five members voted for the termination of Clark and not the two-thirds vote mandated by section 79.240. The only way section 79.240 could have been followed was to allow the mayor pro tem to vote as a member of the board of alderman and consider his vote as the mayor pro tem as another vote. I do not think that result is supported by the plain meaning of the statute or by logic. Therefore, I dissent from Point I.

Nancy Steffen Rahmeyer, J. - Concurring in Part and Dissenting in Part Opinion Author