Douglas ALLEN, Appellant,

v.

MIDWEST INSTITUTE OF BODY WORK AND SOMATIC THERAPY, L.L.C., Respondent.

No. WD 65619.

Missouri Court of Appeals, Western District.

Aug. 1, 2006.

---

Mark A. Olthoff and Jonathan H. Gregor, Kansas City, MO, for appellant.

Justin J. Johl and Kevin J. Karpin, Kansas City, MO, for respondent.

Before EDWIN H. SMITH, C.J., and SPINDEN and NEWTON, JJ.

EDWIN H. SMITH, Chief Judge.

Douglas Allen appeals the summary judgment of the Circuit Court of Clay County for the respondent, Midwest Institute of Natural Healing (Midwest), L.L.C., formerly known as Midwest Institute of Body Work and Somatic Therapy, L.L.C., on the appellant's two-count petition seeking reinstatement to the Institute. In both Count I, denominated as "Injunction against Midwest Institute," and Count II, denominated "Specific Performance against Midwest Institute," the appellant alleged that he was wrongfully expelled from the Institute by Midwest.

The appellant raises two points on appeal. In Point I, he claims that the trial court erred in granting summary judgment to Midwest on Count I for injunctive relief because there is a genuine dispute as to whether the appellant voluntarily quit Midwest or was expelled. In Point II, he makes the identical claim, except as to Count II for specific performance.

We reverse and remand.

### Facts

The appellant filed his two-count petition against Midwest in the Circuit Court of Clay County on July 14, 2003. In his petition, he sought, *inter alia*, reinstatement as a student at Midwest, claiming that he had been wrongfully expelled.

Midwest was founded by Carmelita Beets in 1992 and certified by the State Board of Therapeutic Massage in either 1997 or 1998. It teaches therapeutic massage and prepares students for certification by the Board. It has approximately 125 students, and employs seventeen faculty members and seven staff members. Beets is the president and the principal of Midwest, and is not only actively involved in its administration, but teaches four courses.

The appellant became acquainted with Beets in 1993 when he was one of her clients. It was during the course of his treatment by Beets that he became interested in learning massage therapy. Due to his interest, Beets suggested that he enroll as a student at Midwest, which he did and began taking classes in March of 1998. Between March 1998 and August 1999, he successfully completed all his courses but one, receiving an "incomplete"

in that course. In 1999, the appellant was dealing with several personal issues that caused him significant emotional stress: (1) his mother's death; (2) a lawsuit over a failed real estate transaction; and, (3) illness.

The appellant and Beets had a mutual friend, Bonita Bindi. The appellant and Bindi met through a dating service in 1989 or 1990 and remained friends. It was the appellant who introduced Bindi to Midwest. Bindi met Beets sometime in late 1989 or early 1990, while Bindi was taking an introductory course at Midwest. Bindi later enrolled at Midwest. Both Beets and Bindi were aware of the stress the appellant was under in 1999, as a result of his mother's death and other personal issues, and had discussions about it.

In the fall of 1999, in a telephone conversation with Bindi, the appellant confided in her about his feelings and emotions concerning the stress in his life. Bindi had encouraged him to share his feelings with her. During this conversation, the appellant became aware of the fact that Bindi and Beets had been discussing the appellant and his situation, and what they could do to help. Shortly after his telephone conversation with Bindi, feeling betrayed by both Bindi and Beets, the appellant called Beets to convey his feelings toward her and demanded a full refund of the money he had already paid for three upcoming classes at Midwest, which refund he eventually received. The appellant now contends that in asking for a refund, he never intended to quit or take a leave of absence from Midwest, and that he never indicated to Beets that he intended to do so. At the time, he was undecided about his course of action. Beets, however, contends otherwise. She contends that he told her: "[H]e did not want to be in our school any longer. He wanted out of the god damn [sic] place. It was not what he wanted to do. He wanted his money back. It was over period." The appellant contends that when he called Beets back, he advised her that he intended to continue at the Institute, but she advised that he would not be allowed to do so.

At some point, Beets offered to allow the appellant to continue at Midwest, with certain conditions. He had to promise to improve his personal hygiene and had to receive psychological counseling. He also had to apologize to all those at Midwest whom he had offended by his conduct. Beets contended that his behavior at Midwest was often erratic and threatening, and that his undergarments were often soiled with urine and excrement, all of which was offensive to students, faculty and staff at Midwest. Given the nature of their training, students often did classwork in their underwear. The appellant contends that as part of his required apologies for reinstatement, Beets required expressly that he apologize to Bindi and "make peace with her." While Beets testified in her deposition testimony that this was not true, she admitted in interrogatories that she had made such a requirement of the appellant for reinstatement.

On November 17, 2004, at the close of discovery in the case, Midwest filed a motion for summary judgment as to both counts of the appellant's petition. Midwest's motion was taken up and heard on May 18, 2005. The motion was sustained and summary judgment entered for Midwest on both counts of the appellant's petition.

This appeal follows.

### Standard of Review

In reviewing the grant of a summary judgment, we review *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993).

The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Id.* (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 380.

When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (citations omitted).

## I.

The appellant raises two points on appeal. Point I deals with the trial court's summary judgment for Midwest on Count I of the appellant's petition, while Point II deals with the trial court's summary judgment for Midwest on Count II of his petition. In Point I, the appellant claims that the trial court erred in granting summary judgment to Midwest on Count I for injunctive relief because there is a genuine dispute as to whether the appellant voluntarily quit Midwest or was expelled. In Point II, he makes the identical claim, except as to Count II for specific performance.

The record reflects that the respondent alleged in its motion two bases on which it was entitled to summary judgment: "A. *The Uncontroverted Facts Establish that [Appellant] Voluntarily Ended His Relationship with Midwest Institute* "; and, "B. *[Appellant] is not Entitled to Specific Performance as a Matter of Law.*" In claiming as he does in both points, Midwest points out that the appellant is assuming necessarily that the trial court granted Midwest summary judgment on the first basis, as to both counts of the appellant's petition, choosing to wholly ignore the issue of whether the trial court erred in granting summary judgment on the second basis alleged. Midwest contends that inasmuch as the trial court did not expressly find on which basis it was granting summary judgment, as to either count, we must assume, for purposes of this appeal, that summary judgment was granted on either basis, such that in not challenging summary judgment on the second basis alleged in Midwest's motion, the appellant had abandoned the issue, and we must, therefore, affirm the trial court's summary judgment for the respondent on both counts on the basis that it has gone unchallenged.

■ In contending as it does, Midwest is assuming necessarily that the second basis alleged for summary judgment was sufficient for the trial court to grant it summary judgment as to both counts of the appellant's petition. This is so in that a movant/defendant is not entitled to full summary judgment, which, unlike a partial summary judgment, is subject to appellate review as a final judgment unless it successfully challenges all theories of the non-movant/plaintiff's case. *Bost v. Clark,* 116 S.W.3d 667, 674 (Mo.App.2003). While the first basis alleged by Midwest in its motion for summary judgment challenges both counts of the appellant's petition, contrary

to Midwest's assumption, the second basis clearly does not. As such, Midwest is incorrect in contending that the appellant's failure to appeal the issue of whether the trial court erred in granting summary judgment, as to both counts, on the second basis alleged for summary judgment, requires our affirmance.

As a second basis for summary judgment, the respondent alleged that:

### B. *[Appellant] is not Entitled to Specific Performance as a Matter of Law.*

The Court need not even determine the merits of [Appellant's] fact allegations because [Appellant] simply cannot, as a matter of law, obtain the relief he has requested. Even assuming the truth of the allegations set forth in [Appellant's] Petition, and thereby assuming that Midwest Institute *breached a contract* with [Appellant], he is simply not entitled to specific performance or injunctive relief under Missouri law.

(Emphasis added.) The appellant alleged further, as to the second basis, that the contract between the appellant and Midwest was a personal services contract such that under Missouri law, "specific performance or other injunctive relief [was] not available" to the appellant to force Midwest to re-admit him. Hence, Midwest was assuming, in its second alleged ground for summary judgment, that Count I, like Count II of the appellant's petition, was based upon a breach of contract and the only distinction between the two counts was the relief sought. The summary judgment record refutes this assumption and demonstrates that the appellant's theory for injunctive relief in Count I was not based upon a breach of contract, as assumed by Midwest in contending that the appellant's failure to address on appeal the second basis it alleged for summary judgment on both counts of the appellant's petition is fatal to his appeal, but on a due process violation in the interference with a property interest.

In its brief, the appellant contends that Count I for injunctive relief, unlike Count II, did not assert a contract action, but asserted a constitutional due process violation based on a property interest that he had acquired in his training and education at Midwest. In that regard, he alleged in Count I of his petition, that he was expelled "without any hearing or due process beyond his single telephone discussion with [Carmelita] Beets where she informed him of her decision to dismiss or expel him," and that as such, Midwest's "expulsion of [Appellant] was arbitrary and capricious, fundamentally unfair and was done in bad faith." From this it is clear that Count I for injunctive relief is not grounded in contract, as the appellant contends. As such, Midwest's second basis for summary judgment, as to specific performance and other injunctive relief not being available for a breach of a personal services contract, would not have any bearing on Count I. Accordingly, for the trial court to have granted Midwest full summary judgment, summary judgment on both counts of his petition, it would had to have been on the first ground alleged by Midwest in its motion for summary judgment, which applied to both counts—that the undisputed material facts alleged in Midwest's motion demonstrated that the appellant was not expelled from Midwest, but voluntarily quit.[1]

---

1. Although, as we discuss, *supra*, the second basis alleged in Midwest's motion for summary judgment, that the relationship between Midwest and him constituted a personal services contract for which injunctive relief and specific performance was not available, does not apply to Count I of the appellant's petition, it would apply to Count II, and as such *partial* summary judgment as to that count on that basis, if supported by the record, would

■ The appellant concedes in his brief that the issue of whether, in this state, injunctive relief is available to a student at a private college or university, who claims that he was expelled arbitrarily and capriciously, without due process, based on a claimed property interest, is a case of first impression. Regardless, Midwest never challenged Count I, in its motion for summary judgment, on the basis that this state has not and should not recognize such a cause of action. Hence, while we are to affirm the trial court's grant of summary judgment on any basis supported by the summary judgment record, *Cent. Mo. Elec. Coop. v. Balke,* 119 S.W.3d 627, 635 (Mo. App.2003), here, because the issue of whether the appellant could maintain, in Count I, a claim for injunctive relief, based on an alleged property interest in his being educated at Midwest, was never raised by Midwest in its motion for summary judgment, and, thus, is not part of the summary judgment record, we cannot consider it in determining whether the trial court erred in granting Midwest full summary judgment. Hence, the only issue for us on appeal is whether the trial court erred in granting full summary judgment to Midwest on the remaining basis alleged in its motion—*"The Uncontroverted Facts Establish that [Appellant] Voluntarily Ended His Relationship with Midwest Institute."*

Regardless of which count is addressed, Count I in Point I or Count II in Point II, as we discuss, *infra,* if, in fact, the undisputed material facts demonstrate that the appellant quit Midwest, rather than being expelled, as Midwest alleged in its motion, the trial court would have been correct in granting full summary judgment to Midwest. Hence, we need not address the two points separately, but can simply address the singular issue of whether the summary judgment record supports the fact that the appellant quit Midwest, rather than being expelled, the only basis on which full summary judgment, which is subject to our review as a final judgment, could be granted, as we discuss, *supra.*

■ Pursuant to Rule 74.04, to be entitled to summary judgment, the movant must show that: (1) there is no genuine dispute as to the material facts on which the movant is relying for summary judgment; and (2) based on those undisputed facts, the movant is entitled to judgment as a matter of law. Rule 74.04; *ITT,* 854 S.W.2d at 380; *Childress Painting & Assocs. Inc. v. John Q. Hammons Hotels Two,* 106 S.W.3d 558, 561 (Mo.App.2003). A movant's right to judgment as a matter of law differs significantly depending upon whether that movant is a "claimant" or a "defending party." *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381. Here, the movant, Midwest, is a defending party.

If the movant is a defending party, . . . a *prima facie* case for summary judgment can be established by employing one or more of three means: (1) showing undisputed facts that negate any one of the plaintiff's required proof elements; (2) showing that the plaintiff, after an adequate period of discovery, has not produced and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of one or more of the plaintiff's proof elements; or (3) showing that there is no genuine dispute as to the existence of the facts necessary to prove the movant's properly pleaded affirmative defense. Regardless of which of these three means is employed by the defending party, each establishes a right to judgment as a matter of law.

be authorized. That issue, however, is not subject to our review, in that partial summary judgments are not final judgments subject to our review. *Bost,* 116 S.W.3d at 674.

*Childress Painting,* 106 S.W.3d at 561 (citations omitted). "To be entitled to full summary judgment, a defending party, . . ., employing one of the three means for obtaining summary judgment, must allege undisputed facts demonstrating that the plaintiff cannot recover on any theory pled." *Id.* Hence, "[a] summary judgment for a defendant on less than all the theories pled by the plaintiff for recovery does not constitute a full summary judgment, but only a partial summary judgment, which is not a final judgment subject to our review." *Id.*

As noted, *supra,* in its motion for summary judgment, Midwest alleged two grounds on which it was relying for summary judgment. However, as discussed, *supra,* the only ground on which the trial court could have granted Midwest full summary judgment, subject to our review, was the first ground—that the undisputed material facts alleged established that the appellant quit Midwest and was not expelled. Both Counts I and II of the appellant's petition are predicated on the common assertion or proof element that the appellant was expelled from Midwest. Accordingly, Midwest, using the first means available to a defending party for summary judgment, alleged facts in its motion for summary judgment, which it contends negated this requisite proof element of both Counts I and II.

 As we note, *supra,* to make a *prima facie* case for summary judgment, pursuant to Rule 74.04, the movant must allege material facts, which if true, would entitle him to judgment as a matter of law. Rule 74.04(c)(6); *Firestone v. VanHolt,* 186 S.W.3d 319, 325 (Mo.App.2005). Once a *prima facie* case is made, the only way the non-movant can defeat summary judgment is to place in genuine dispute one or more of the material facts on which the movant relies for summary judgment.

*Firestone,* 186 S.W.3d at 325. "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *ITT,* 854 S.W.2d at 382. A general denial is not sufficient to place a material fact in genuine dispute sufficient to rebut a *prima facie* case for summary judgment. *Id.;* Rule 74.04(c)(2). To place a material fact, on which the movant relies for summary judgment, in genuine dispute by denying it, for purposes of defeating a motion for summary judgment, the non-movant "may not rest upon the mere allegations or denials of the party's pleading." Rule 74.04(c)(2). Rather, the movant's response to the motion "shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." *Id.* A genuine issue exists where the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." *ITT,* 854 S.W.2d at 382. "If [a] movant requires an inference to establish his [or her] right to judgment as a matter of law, and the [summary judgment record] reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists," and the movant is not entitled to summary judgment. *ITT,* 854 S.W.2d at 382; *Brock v. Blackwood,* 143 S.W.3d 47, 65 (Mo.App.2004).

To establish, for purposes of summary judgment, that the appellant quit Midwest, rather than being expelled, Midwest alleged in its motion for summary judgment:

31. On or about August 18, 1999, [appellant] voluntarily terminated his enrollment at [Midwest]. ( . . . )

32. On or about August 18, 1999, [appellant] called Ms. Beets and requested a full refund of the tuition payment he had made for all upcoming coursework. ( . . . )

33. Pursuant to [appellant's] request, Ms. Beets, on behalf of Midwest Institute, sent [appellant] a check in the sum of $1,210.00, representing a full refund of the tuition payments [appellant] had made pursuant to the parties' Enrollment Agreement dated August 10, 1999. (...)

34. [Appellant] endorsed and deposited Midwest Institute's check as referenced in Paragraph 33, above. (...)

35. After receiving Midwest Institute's check, [appellant] again called Ms. Beets and advised her that he was still entitled to a refund of $125.00 in connection with another payment he had made to Midwest Institute. (...)

36. Pursuant to [appellant's] request, Ms. Beets, on behalf of Midwest Institute, sent Plaintiff a check in the sum of $125.00. (...)

37. [Appellant] endorsed and deposited Midwest Institute's check, as referenced in Paragraphs 33 through 37. (...)

38. After [appellant] had obtained payment in full from the refund checks referenced in Paragraphs 33 through 37, above, [appellant] called Ms. Beets and advised her that he would like to re-enroll as a student at Midwest Institute. (...)

40. Midwest decided not to allow Plaintiff to re-enroll at the school on the grounds that his behavior was erratic, odd and sometimes threatening and he had previously exhibited very poor personal hygiene. (...)

41. Prior to August of 1999, [appellant] had been provided with a copy of Midwest Institute's policy concerning leaves of absence. (...)

42. [Appellant] never requested or received a leave of absence from Midwest Institute, pursuant to the school's policies or otherwise. (...)

In claiming that these allegations of fact demonstrate that the appellant quit Midwest, rather than being expelled, Midwest is apparently contending that in seeking and obtaining refunds for coursework and in failing to request a leave of absence, the appellant necessarily had quit Midwest.

 In response to Midwest's allegation that he quit, rather than being expelled from Midwest, the appellant alleged in his response to Midwest's motion:

31. [Appellant] only asked for his money back on three courses he had intended to take (*see* Exhibit M), but he never terminated his enrollment at Midwest Institute, told anyone he did not intend to finish his coursework at Midwest Institute, or decided to quit the school. (Allen Affidavit, Exhibit K, pp. 1–2, ¶¶ 6–8; Allen depo., Exhibit B, p. 118, lines 9–16.) ... In the 'The Body Somatic Practitioner Training Program,' (undated) (Exhibit F), the school provides rules for receiving refunds for courses paid for by students, but which the student cancels in advance or withdraws after classes have begun. (Exhibit F, p. 16). Nowhere does the Refund Policy state that a student who receives a refund for one or more courses upon cancellation or withdrawal must reapply for admission to the school. (Exhibit F, p. 16). Nor does the policy require the student to seek a leave of absence in order to receive a refund. (Exhibit F, p. 16; Beets depo., Exhibit A, p. 128, lines 21–25). Finally, nowhere does the Refund Policy state that a student who seeks a refund for one or more courses is considered to have quit the school entirely. (Exhibit F, p. 16).

41. [Appellant] informed Beets of his intention to stay with the Midwest Institute program shortly after she sent him the refund checks for three courses.

(Allen depo., Exhibit B, p. 114, line 12 through p. 115, line 4).

42. Beets never requested or instructed [appellant to] seek a leave of absence. (Beets depo., Exhibit A, p. 64, lines 20–25).

The appellant's response, in accordance with Rule 74.04(c)(2), clearly refutes and puts in issue the question of whether he quit Midwest or was expelled. Accordingly, a material fact on which Midwest relied for summary judgment, as to both Counts I and II, was put in genuine dispute by the appellant, such that the trial court erred in granting Midwest full summary judgment on the appellant's petition.

Point granted.

## Conclusion

The circuit court's summary judgment for Midwest, on Counts I and II of the appellant's petition, is reversed and the cause remanded for further proceedings in accordance with this opinion.

SPINDEN and NEWTON, JJ., concur.