**Johnny Ray CHAD, Appellant,**

v.

**The CITY OF LAKE OZARK, Missouri, Respondent.**

**No. WD 67110.**

Missouri Court of Appeals, Western District.

May 29, 2007.

Anthony L. Gosserand and Christopher J. Lemke, Kansas City, MO, for Appellant.

David G. Bandré, Jefferson City, MO, for Respondent.

Before ULRICH, P.J., and LOWENSTEIN and SMITH, JJ.

EDWIN H. SMITH, Judge.

Johnny Ray Chad appeals the summary judgment of the Circuit Court of Miller County for the respondent, the City of Lake Ozark (City), on the appellant's "Petition for Peremptory Writ of Mandamus," seeking a writ compelling the respondent to reinstate him as its City Administrator, after he had been removed from office on August 9, 2005, pursuant to the vote of the Mayor and three of the six members of the respondent's Board of Alderman (Board). In his petition, the appellant alleged that he was removed from office in violation of § 105.370 of the Ordinances of Lake Ozark (Ordinances).

The appellant raises one point on appeal. He claims that the trial court erred in granting summary judgment to the respondent on his petition, based on its interpretation of § 105.370 of the Ordinances, because it erroneously interpreted § 105.370 as not requiring removal by a majority of the six members of the Board, excluding the Mayor.

We reverse and remand with directions for the trial court to enter summary judgment for the appellant on his motion for summary judgment, ordering the respondent to reinstate him as its City Administrator.

## Facts

The facts of this case are undisputed. The respondent is a fourth-class city located in both Camden and Miller Counties, and is subject to all the state statutes governing cities of the fourth class, including those set forth in Chapter 79.[1] One of the appointive offices established by the City, pursuant to § 79.230, is the City Administrator, which position the appellant held until he was removed on August 9, 2005.

1. All statutory references are to RSMo 2000, unless otherwise indicated.

At the August 9, 2005, meeting of the Board, Mayor Paul Sale recommended that in accordance with § 105.370 of the Ordinances, the appellant be removed. Alderman Elbert Sutton moved for his removal, and Alderman Jim Elkin seconded the motion. A vote was then held, with three aldermen voting for removal and three voting against. Aldermen Sutton, Elkin, and Steve Dalton voted for removal, while Aldermen Paul Garrison, Kerry Gray, and Keith Blankenship voted against removal. Because there was a tie vote of the Board, Mayor Sale was allowed to vote to break the tie and voted for removal.

On October 11, 2005, the appellant filed his petition for a peremptory writ of mandamus in the Circuit Court of Miller County, seeking a writ from the court ordering the respondent to reinstate him as its City Administrator. As a basis for his reinstatement, he alleged that he was removed as the City Administrator of the respondent city, in violation of § 105.370 of Ordinances, which governed the removal of the City Administrator, because it expressly required both the Mayor and a majority of the elected members of the Board to vote for removal, which did not occur.

On November 10, 2005, the respondent filed a motion to dismiss, alleging, *inter alia*, certain deficiencies in the appellant's petition. On November 16, 2005, the appellant filed a memorandum in opposition to the respondent's motion and a motion to amend his petition. The motion to amend was in response to the allegations contained in the respondent's motion to dismiss. The appellant's motion to amend was granted, and on January 17, 2006, he filed his first-amended petition. On January 25, 2006, the City filed a motion for summary judgment. On February 24, 2006, the appellant filed a cross-motion for summary judgment. The parties' motions were heard on April 13, 2006, and taken under advisement. On April 15, 2006, the trial court granted the respondent's motion for summary judgment and denied the appellant's. The trial court, in granting the respondent summary judgment on the appellant's petition, found that the appellant was removed in accordance with § 105.370 of the Ordinances and § 79.240.

This appeal follows.

## Standard of Review

The propriety of summary judgment is an issue of law, *Allen v. Midwest Inst. of Body Work & Somatic Therapy, L.L.C.*, 197 S.W.3d 615, 619 (Mo.App.2006), and we therefore review the trial court's decision to grant the respondent's motion for summary judgment *de novo. Id.* at 618. We need not defer to the trial court's order. *Id.* at 619. We will, however:

> [R]eview the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* (citation omitted).

The criteria we use on appeal in determining the propriety of the trial court's grant of the motion for summary judgment are no different from those which should have been employed by the trial court. *Id.* We will uphold the trial court's grant of summary judgment if: "(1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law." *Id.*

## I.

In his sole point on appeal, the appellant claims that the trial court erred in grant-

ing summary judgment to the respondent on his petition for a writ to reinstate him as the respondent's City Administrator, based on its interpretation of § 105.370 of the Ordinances, because it erroneously interpreted § 105.370 as not requiring removal by a majority of the six members of the Board, excluding the Mayor. We agree.

To be entitled to summary judgment under Rule 74.04, the movant must show that: (1) there is no genuine dispute as to the material facts on which he is relying for summary judgment; and (2) based on those undisputed facts, he is entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). If the movant is a defending party, as in our case, a *prima facie* case for summary judgment can be established by employing one or more of three means: (1) showing undisputed facts that negate any one of the plaintiff's required proof elements; (2) showing that the plaintiff, after an adequate period of discovery, has not produced and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of one or more of the plaintiff's proof elements; or (3) showing that there is no genuine dispute as to the existence of the facts necessary to prove the movant's properly pleaded affirmative defense. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. "Regardless of which of these three means is employed by the 'defending party,' each establishes a right to judgment as a matter of law." *Id.*

In our case, the respondent employed, in its motion, the first means available to a defendant to obtain summary judgment, alleging undisputed facts that negate any one of the plaintiff's required proof elements, alleging that, as a matter of law, the interpretation of § 105.370 relied upon by the appellant for the trial court's ordering it to reinstate him as its City Administrator, was erroneous. In that regard, the appellant, in order to succeed on his petition, was relying on an interpretation of § 105.370 that to remove him, the Mayor *and* a majority of the Board, excluding the Mayor, had to approve of his removal. In other words, he was alleging that he could not be removed, pursuant to § 105.370, unless the Mayor *plus*, at least, four members of the Board agreed. The respondent asserted in its motion, however, that § 105.370 of the Ordinances and § 79.240 only required approval of a majority of the Board, including the Mayor in cases of a tie vote of the Board. Thus, as the parties agree, there is no dispute as to the underlying material facts on which the respondent relied for summary judgment. Rather, the dispute is simply what is the correct interpretation of § 105.370, in light of § 79.240, which is a legal question that we review *de novo*.

In interpreting a city ordinance, we apply the same rules that are used in interpreting a state statute. *BBCB, LLC v. City of Independence*, 201 S.W.3d 520, 527 (Mo.App.2006). In interpreting a statute, the cardinal rule is to ascertain and, if possible, give effect to the intent of the legislature. *In re Boland*, 155 S.W.3d 65, 67 (Mo. banc 2005). In so doing, we are to give the language used its plain and ordinary meaning. *Id.* If the intent is clear and unambiguous from the language used, we cannot resort to any construction. *Id.* Only if the statute is found to be ambiguous, giving the language used its plain and ordinary meaning, are we permitted to resort to statutory construction. *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 161 (Mo.App.2006).

As agreed by the parties, the respondent is a fourth-class city. Section 79.240 governs the removal of "elective"

and "appointive officers" in such cities. With respect to "appointive officers," like the appellant, § 79.240 reads:

> The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will, and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendation. *The board of aldermen may pass ordinances regulating the manner of impeachments and removals.*

(Emphasis added.) It is well settled that a city may not enact an ordinance that conflicts with state law. *State ex rel. Sunshine Enters. of Mo., Inc. v. Bd. of Adjustment of the City of St. Ann,* 64 S.W.3d 310, 313–14 (Mo. banc 2002). In our case, neither the appellant nor the respondent contend that § 105.370 in any way conflicts with § 79.240. In fact, as found by the trial court, § 105.370 is almost identical in its wording to § 79.240. Section 105.370 reads, in pertinent part:

> The City Administrator shall serve at the pleasure of the Board of Aldermen. The Mayor and a majority of all the Board of Aldermen, may remove the City Administrator from office at will. If requested, the Board of Aldermen shall grant the City Administrator a public hearing within thirty (30) days following notice of such removal.

As the appellant contends, giving the language of § 105.370 and § 79.240 their plain and ordinary meaning, to remove him, both the Mayor and a majority of the Board had to agree. The language of both the ordinance and § 79.240 signals a clear intent to require the concurrence of the Mayor and a majority of the Board in order to remove the City Administrator. Both the ordinance and the statute clearly

treat the Mayor and the Board as being separate and distinct for purposes of removing the City Administrator. As such, to lawfully remove him, a majority of the six Board members, separate and apart from Mayor Sale, were required, by law, to approve the appellant's removal.

As noted, *supra,* the appellant's removal was not approved by a majority of the six elected Board members. The vote among the six aldermen was a tie. The purported majority was only obtained, after the first vote ended in a tie, by allowing Mayor Sale to vote as a member of the Board. In other words, in removing the appellant, Mayor Sale's vote effectively was counted not only to satisfy the Mayor-approval requirement of § 105.370 and § 79.240, but to satisfy the majority-of-the-Board requirement also. Citing § 79.120, the respondent contends that this interpretation of § 105.370 and § 79.240 was permissible. Section 79.120 reads, in pertinent part: "The mayor shall have a seat in and preside over the board of aldermen, but shall not vote on any question except in case of a tie, nor shall he preside or vote in cases when he is an interested party." Identical to that statutory section is § 105.140 of the Ordinances. The respondent's reliance on § 79.120 is misplaced.

We recognize that in interpreting § 105.370 and § 79.240, we are to read them together with other ordinances and state statutes with similar or related subject matter, harmonizing them when possible, while giving meaning to each of their provisions. *Maxwell v. Daviess County,* 190 S.W.3d 606, 611 (Mo.App.2006). If they appear to conflict, we must attempt to reconcile the language of each to give effect to both. *Id.* However, if they cannot be harmonized, the specific controls over the general. *Id.* Hence, if § 105.370 and § 79.240, the specific, conflict with the gen-

eral, § 105.140 and § 79.120, § 105.370 and § 79.240 control.

To contend, as the respondent does, that § 105.370 and § 79.240 must be read in light of § 79.120 so as to allow the Mayor to essentially have two votes in case of a tie among the Board members in determining the majority-of-the-Board requirement of § 105.370 and § 79.240 violates the clear intent of the ordinance and § 79.240. As the respondent concedes in its brief: "It is certainly a voting anomaly that one (1) individual receive multiple votes on an issue." Nonetheless, the respondent still urges its interpretation that allows just that. As written, § 105.370 and § 79.240 make it clear that the term "majority" applies only to the Board. To overlay § 79.120, changes the clear intent of § 105.370 and § 79.240, that the City Administrator cannot be removed, unless the Mayor *plus* a majority of the Board approved, with no overlap of the Mayor's vote. A tie vote is obviously not a majority vote of the Board.

In contending as it does, as to the interpretation to be given § 105.370 and § 79.240, in light of § 79.120, the respondent relies primarily on *Hardesty v. City of Buffalo,* 155 S.W.3d 69, 75 (Mo.App. 2004). There, the Southern District of this court, relying on *State ex rel. Ciaramitaro v. City of Charlack,* 679 S.W.2d 405, 407 (Mo.App.1984), held that, pursuant to § 79.120, a Mayor was given the authority to break a tie of the Board when considering the removal of an appointive officer, pursuant to § 79.240. In *Ciaramitaro,* the Eastern District reasoned, citing *Mound City ex rel. Reinert Bros. Construction Co. v. Shields,* 220 Mo.App. 798, 278 S.W. 798 (1925), that inasmuch as § 79.120 had been previously applied so as to permit a Mayor to break a tie in cases of the passage of ordinances, pursuant to § 79.130, § 79.120 would logically apply to break a tie in the

context of § 79.240. *Ciaramitaro,* 679 S.W.2d at 407. We find that neither *Hardesty* nor *Ciaramitaro* is controlling in that they incorrectly interpreted § 79.240 in light of § 79.120.

The sole basis on which the *Ciaramitaro* court held that § 79.120 permitted the Mayor to break ties in cases of removal of an appointive officer, pursuant to § 79.240, was the fact that § 79.120 had been previously interpreted in *Mound City* as permitting the Mayor to break ties in cases of ordinance passage, pursuant to § 79.130. *Ciaramitaro,* 679 S.W.2d at 407. In other words, the court necessarily reasoned, incorrectly, that § 79.130 and § 79.240 were functionally equivalent when it came to the voting issue in question. And, in fact, in that regard, the court stated: "Although we have found no Missouri cases addressing whether a mayor is considered one of the 'members elected to the board of aldermen' under § 79.240, *substantially the same language appears in § 79.130, which requires a majority of the members elected to the board to approve an ordinance before it becomes law.*" *Ciaramitaro,* 679 S.W.2d at 407 (emphasis added). As to the Mayor's role, if any, in the passage of ordinances, pursuant to § 79.130, and his role in removing an appointive officer, if any, pursuant to § 79.240, the differences could not be more stark.

Section 79.130 reads, in pertinent part: "No ordinance shall be passed except by bill, and no bill shall become an ordinance unless on its final passage a majority of the members elected to the board of aldermen shall vote for it, and the ayes and nays be entered on the journal." Whereas, § 79.240 reads, in pertinent part:

The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will, and any such appointive officer may

be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendation.

Hence, while § 79.240 expressly speaks in terms of the Mayor and the majority of the Board as being separate and distinct voting entities, § 79.130 does not. It speaks only in terms of the "majority of the members elected to the board of aldermen." In other words, while § 79.130 speaks in terms of questions presented to the members of the Board *only,* without mentioning the Mayor, § 79.240 speaks of questions presented to both the Mayor *and* the Board as separate entities. Moreover, whereas § 79.130, applying § 79.120, has been interpreted as only allowing the participation of the Mayor in cases of ties, § 79.240 expressly empowers the Mayor to vote on the issue of removal, without the prerequisite of there *first* being a tie of the Board members. Logically, in expressly providing in § 79.120 that the Mayor "shall not vote on any question *except in case of a tie,*" (emphasis added), the legislature was envisioning its applications in cases only where the Mayor had not already been authorized to vote in a particular manner, such as in the case of § 79.240. Obviously, the legislature never intended that § 79.120 be applied to defeat the specific intent of another statute that required the Mayor's vote *plus* a majority of the Board, which would effectively give the Mayor two votes on the same issue. Given this analysis, it is easy to see why the court in *Mound City* applied the tie-breaking provision of § 79.120 in the case of ordinance passage, pursuant to § 79.130. However, for the *Ciaramitaro* court, relying on *Mound City,* and the *Hardesty* court, relying on *Ciaramitaro,* to rely on the same logic for applying § 79.120 in the context of § 79.130, as the basis for applying it in the context of § 79.240, ignores

the obvious and significant differences between § 79.130 and § 79.240.

Further support for why *Hardesty* and *Ciaramitaro* were incorrect for applying § 79.120 to § 79.240 cases can be found in the fact that the legislature provided two distinct scenarios for the removal of an appointive officer by a fourth-class city: (1) the Mayor recommends the removal, and the *majority* of the Board consents to it; or (2) the Mayor does not recommend it, but *two-thirds* of the members of the Board vote for it. The actual language of the statute provides:

The mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will, and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the board of aldermen, independently of the mayor's approval or recommendation.

§ 79.240. This language, as to when the Mayor approves and when he does not, makes it clear that the legislature intended that the Mayor and the Board have separate and distinct roles in the process of removing an elective officer. To allow these specified roles to be co-opted by overlaying the general statute, § 79.120, which is clearly intended to apply to questions presented to the Board only, ignores the legislature's intent with respect to § 79.240.

For the foregoing reasons, in granting summary judgment to the respondent on the appellant's writ to reinstate him as the City Administrator of Lake Ozark, the trial court relied on an incorrect interpretation of § 105.370 and § 79.240. Because the respondent's *prima facie* case for summary judgment relied on that interpretation, the trial court's grant of summary judgment to the respondent on that basis was incorrect and must be reversed.

■ The appellant not only appealed the grant of summary judgment to the respondent, on the appellant's petition, he also appealed the denial of his summary judgment. Generally, we will not review the denial of a summary judgment motion because it is not a final and appealable judgment. *Brock v. Blackwood*, 143 S.W.3d 47, 69–70 (Mo.App.2004). However, in cases involving extraordinary circumstances we have. *Id.* In that regard, as stated in *Brock:*

> Such circumstances have been found where in reviewing and reversing the grant of one party's motion on the merits, the appellate court necessarily concludes that on the summary judgment record made, the adverse party's motion should have been sustained. In such cases, to reverse and remand without ordering the trial court to enter summary judgment for the adverse party would seem illogical. Despite the logic of the situation, such a course of action still begs the question as to what authority the appellate court has for reviewing and ruling on the denial of the summary judgment motion in that it is not a final judgment subject to appellate review.
>
> The answer to the question posed would appear to lie in the fact that in the 'extraordinary circumstances' cases, it could be argued that the appellate court is not actually reviewing the denial of the motion for summary judgment when it declares that summary judgment should have been entered for a party in reversing the trial court's grant of summary judgment for the other party. The argument would be that, in declaring that summary judgment should have been granted to the party whose motion was denied by the trial court, the appel-

late court is doing so as part and parcel of its authorized review and ruling on the trial court's grant of summary judgment to the adverse party and in accordance with Rule 84.14, which authorizes the appellate court to declare the judgment that the trial court ought to have given.

*Brock*, 143 S.W.3d at 70 (citation omitted). Here, by the parties' own admissions, there is no dispute as to the underlying facts, only the interpretation to be given § 105.370 and § 79.240. In other words, depending on the interpretation given to § 105.370 and § 79.240, either the motion for summary judgment for the respondent or the appellant should have been granted. And, because we interpret the ordinance and the statute in the appellant's favor, pursuant to Rule 84.14,[2] we reverse and direct the trial court to enter summary judgment for the appellant on his writ.

### Conclusion

The judgment of the Circuit Court of Miller County, granting the respondent's motion for summary judgment on the appellant's writ, is reversed, and the case is remanded to the trial court with directions to enter summary judgment for the appellant, ordering the respondent to reinstate him as the City Administrator of the City of Lake Ozark.

ULRICH, P.J., and LOWENSTEIN, J., concur.

---

**2.** All rule references are to the Missouri Rules of Civil Procedure, 2007, unless otherwise indicated.