CITY OF COLUMBIA, Appellant,

v.

Kenneth HENDERSON, Respondent.

No. WD 75559.

Missouri Court of Appeals,
Western District.

May 21, 2013.

Robert Rinck, Columbia, MO, for Appellant.

Kevin O'Brien, Columbia, MO, for Respondent.

Before: GARY D. WITT, P.J.,
THOMAS H. NEWTON, and MARK D. PFEIFFER, JJ.

THOMAS H. NEWTON, Judge.

The City of Columbia (City) appeals from the trial court's judgment granting Mr. Kenneth Henderson's motion to dismiss charges against him under section 5–29 of the Columbia Code of Ordinances for keeping two alligators in Columbia. We find the trial court erred in granting Mr.

include interest at the electric utility's short-term borrowing rate." *See also* section 386.266.4(4).

Henderson's motion to dismiss because the City's allegations, if proved, could support the charges. We reverse and remand.

### Factual and Procedural Background

On June 28, 2011, the City charged Mr. Henderson in municipal court with two counts of failing to comply with section 5–29, the City's dangerous exotic animal ordinance.[1] Mr. Henderson filed a motion to dismiss the charges, arguing that the ordinance was unconstitutionally vague or overbroad. The municipal court denied the motion, and Mr. Henderson was convicted and sentenced to pay a fine. Mr. Henderson sought a trial *de novo* in the circuit court, where he filed a motion to dismiss, contending section 5–29 was "unconstitutionally vague and/or overbroad" as applied to the case.

At a hearing, Mr. Henderson testified that he kept the alligators, "Snuggles," and "Babe," for educational programs. He stated that both animals had been raised in captivity and admitted that alligators could be dangerous.

The trial court initially denied Mr. Henderson's motion to dismiss and a trial was scheduled. However, after further consideration, the trial court determined that the alligators were not within the ordinance's definition of "exotic animals," and that therefore section 5–29 did not bar the keeping of an alligator. Consequently, it granted Mr. Henderson's motion to dismiss. The City appeals.

### Standard of Review

■ We review the trial court's ruling on a motion to dismiss for an abuse of discretion. *State v. Clinch,* 335 S.W.3d 579, 583 (Mo.App. W.D.2011).[2] A trial court abuses its discretion when its decision "is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (internal quotation marks and citation omitted). However, where the trial court's decision to dismiss a criminal charge turns on a question of law, our review is *de novo. State v. Smothers,* 297 S.W.3d 626, 632 (Mo.App. W.D.2009) (employing *de novo* review of dismissal of criminal charges where issue was one of statutory interpretation).

### Legal Analysis

In its first and second points, the City contends the trial court erred in finding section 5–29 unconstitutionally vague because the ordinance unambiguously bars the keeping of dangerous reptiles within city limits and a person of ordinary intelligence would understand that the ordinance proscribes the keeping of dangerous reptiles within city limits. Mr. Henderson responds that the trial court did not find the ordinance unconstitutionally vague, but rather found that the plain language of section 5–29 does not apply to alligators. Because the City raises essentially the same arguments in both its points, we discuss them together.

■ Mr. Henderson is correct that the trial court did not declare section 5–29 unconstitutional. Rather, the trial court dismissed the case based on its determination that alligators were not barred by

---

**1.** Section 5–29 was amended July 5, 2011, and the ban on dangerous exotic animals is now found in section 5–9. *See* https://www.gocolumbiamo.com/Council/Columbia_Code_of_Ordinances/Chapter_5/9.html.

**2.** Prosecutions of municipal ordinance violations are civil matters, however they are considered to be "quasi-criminal" in nature and rules of criminal procedure apply. *City of Joplin v. Marston,* 346 S.W.3d 340, 341 (Mo. App. S.D.2011); Rule 37.74.

section 5–29. The judgment states that section 5–29 of the ordinance did not encompass alligators because alligators were not "exotic animals" under section 5–1: "Section 5–1 of the Ordinances defines the term 'Exotic Animal.' An alligator does not fall within that definition."

When interpreting a city ordinance, we follow the same rules that are applied to interpreting a state statute. *Chad v. City of Lake Ozark,* 223 S.W.3d 208, 211 (Mo. App. W.D.2007). "The intent of the municipal legislative body is to be found primarily in the language of the ordinance." *City of Joplin v. Joplin Water Works Co.,* 386 S.W.2d 369, 373 (Mo.1965) (internal quotation marks and citation omitted). To ascertain intent, we look to the plain and ordinary meaning of the language used. *Chad,* 223 S.W.3d at 211. We refrain from applying judicial "rules of construction unless there is some ambiguity." *Moynihan v. Gunn,* 204 S.W.3d 230, 234 (Mo.App. E.D.2006).

Section 5–29, entitled "Dangerous exotic animals," provided in relevant part that:

(a) No person shall keep, harbor, own or knowingly allow to be in or upon the person's premises *any dangerous exotic animal including* any lion, tiger, leopard, ocelot, jaguar, cheetah, margay, mountain lion, Canada lynx, bobcat, jaguarundi, bear, hyena, wolf, coyote, *any deadly dangerous or venomous reptile* or any other exotic animal declared by the director of public health to be dangerous[.]

(emphasis added).

By its plain language, section 5–29 barred "dangerous exotic animals," and enumerated a specific list. That section also barred exotic animals declared by the

public health director to be dangerous.[3] The ordinance did not define "dangerous," but did define "exotic animals."

Section 5–1 defined exotic animal as follows:

Exotic animal includes the following:

(1) Any mammal not generally accustomed to live in or near human populations.

(2) Any mammal not considered to be a member of the class generally referred to as domesticated animals.

(3) Poisonous reptiles and poisonous arthropods.

(4) All nonhuman primates.

(5) All animals listed on the endangered species list . . .

(6) All animals protected from hunting and capture by federal and state law.

(7) All predatory birds.

An alligator is not a mammal, thus it did not fall within subsections one or two of section 5–1. Nor is it a poisonous reptile, arthropod, or a nonhuman primate; it was not an exotic animal under subsection three or four. No argument was made and no evidence was offered to suggest that this type of alligator was an endangered species or protected from hunting and capture; thus, they did not fall under subsections five and six. As to subsection seven, an alligator is obviously not a predatory bird. Consequently, the trial court correctly found that the alligators were not exotic animals within the types listed by section 5–1.

 Although alligators were not delineated on this list, the City argues that section 5–1 stated that it "includes" those types of animals listed and we should interpret "includes" as a term of enlarge-

---

**3.** The parties do not contend that the public health director declared alligators to be dan- gerous.

ment and read the list of exotic animals in section 5–1 as a nonspecific list to which the addition of other animals could be inferred. *See Short v. Southern Union Co.,* 372 S.W.3d 520, 532 (Mo.App. W.D.2012) (stating that "includes" in a statute is generally a term of enlargement rather than a term of limitation). Citing *St. Louis County v. State Highway Commission,* 409 S.W.2d 149, 153 (Mo.1966), the City further argues that "when the word 'include' is used in relation to specific 'objects,' there is the implication that there may be others which are not mentioned." However, the cases cited by the City acknowledge that the meaning of "includes" varies by its context, and that the word is often ambiguous. Further, the cases relied on by the City do not deal with statutes in which "includes" is followed by a specifically enumerated list. *See Short,* 372 S.W.3d at 532; *St. Louis Cnty.,* 409 S.W.2d at 152–53. Here, because section 5–1 set forth a specific list of types of animals following the word "includes," the more applicable rule is *expressio unius est exclusio alterius:* the express mention of one thing implies the exclusion of another. *See PDQ Tower Servs., Inc. v. Adams,* 213 S.W.3d 697, 699 (Mo.App. W.D.2007); *State on Inf. Huffman v. Sho–Me Power Co–op.,* 354 Mo. 892, 191 S.W.2d 971, 977 (1946) (finding that because "including" was followed by a specific list, the term was being used restrictively). Moreover,

the ordinance established a criminal offense: we construe such laws against the government and "[n]o one is to be made subject to such [laws] by implication." *State v. Bartley,* 304 Mo. 58, 62, 263 S.W. 95, 96 (Mo.1924).

The City further argues that even if alligators were not "exotic animals" under section 5–1 and, therefore, were not "dangerous exotic animals" barred by section 5–29, section 5–29 further bars dangerous reptiles and "plainly details the prohibition of alligators as dangerous reptiles." We agree. Section 5–29 barred "any dangerous exotic animal *including* . . ." followed by a specifically delineated list: "any lion, tiger, leopard, ocelot, jaguar, cheetah, margay, mountain lion, Canada lynx, bobcat, jaguarundi, bear, hyena, wolf, coyote, *any deadly dangerous or venomous reptile* . . ." (emphasis added). By the plain language of the ordinance, "deadly dangerous or venomous reptiles" were expressly enumerated in the list and were included within section 5–29's ban.[4]

Consequently, the trial court erred in finding as a matter of law that section 5–29 did not apply to alligators and granting Mr. Henderson's motion to dismiss. While alligators did not fall within section 5–1's definition of exotic animal, section 5–29 also barred the keeping of "any deadly dangerous or venomous reptile." At trial,

---

4. As amended, section 5–1 now provides definitions for both "dangerous exotic animals" and "exotic animals." The amended section 5–9, displacing section 5–29, prohibits the keeping of "dangerous exotic animal[s]." Under the revised section 5–1, "dangerous exotic animal includes the following exotic animals":

(1) Lions, tigers, leopards, ocelots, jaguars, cheetahs, margays, mountain lions, Canada lynx, bobcats, jaguarundis, bears, hyenas, wolves and coyotes.

(2) *Deadly, dangerous or venomous reptiles* and venomous arthropods.

(3) All nonhuman primates.

(4) Any other exotic animal declared by the director to be dangerous.

(emphasis added). "[S]ubsequent statutes may be considered in construing previously enacted statutes, in order to ascertain the uniform and consistent purpose of the legislature." *Anderson ex rel. Anderson v. Ken Kauffman & Sons Excavating, L.L.C.,* 248 S.W.3d 101, 109 (Mo.App. W.D.2008). These amendments lend further weight to our conclusion that section 5–29's ban on "dangerous exotic animals" was intended to include a "deadly dangerous or venomous reptile."

the City should be given the opportunity to prove as a factual matter whether alligators are a "deadly dangerous or venomous reptile." Therefore, we reverse the trial court's motion to dismiss and remand for further proceedings.

### Conclusion

For the foregoing reasons, the trial court's judgment is reversed and remanded.

WITT, P.J., and PFEIFFER, J. concur.

